RUTH E. GLENDENNING ET AL. *v.* CONSERVATION
COMMISSION OF THE TOWN OF FAIRFIELD ET AL.
(5176)

BORDEN, SPALLONE and BIELUCH, Js.

Submitted on briefs February 2—decision released August 11, 1987

*Allan R. Johnson* and *Linda M. Guliuzza* filed a brief
for the appellants (named plaintiff et al.).

*Donal C. Collimore* and *Albert L. Harlow* filed a brief
for the appellees (defendants).

BIELUCH, J. This is an appeal by the plaintiffs,
Ruth E. Glendenning, H. Barclay Morley, Annette
Morley, Henry C. Wheeler, Michael Weatherly, Lois
Robards and Harbor Research Corporation,[1] from the
granting by the named defendant of an inland wetlands

---

[1] Additional plaintiffs named in the complaint are not parties to this
appeal.

and watercourses permit to the defendant Christian J. Trefz to conduct regulated activities within such protected areas of Fairfield in the village of Southport. The trial court dismissed the appeal for lack of aggrievement. From that judgment the plaintiffs have appealed. We find error.

On July 27, 1982, Trefz filed an application with the conservation commission of the town of Fairfield, acting as the town inland wetlands agency under the provisions of General Statutes § 22a-42 (c) of The Inland Wetlands and Watercourses Act (IWWA), General Statutes §§ 22a-36 to 22a-45, inclusive, to conduct regulated activities within the inland wetlands and watercourses area of Southport. Trefz proposed to construct a single family residence on Harbor Road, adjacent to Mill River at Southport Harbor. The site is also surrounded on two sides by Long Island Sound.

As part of the proposed construction, Trefz seeks to: (1) raise the grade of the building site by depositing about 425 cubic yards of fill; (2) rehabilitate and heighten the existing retaining wall by installing 360 feet of silt fence within its perimeter; (3) extend an existing sanitary sewer line down Harbor Road to the proposed dwelling; and (4) provide on-site storm water drainage. The plaintiffs are owners of properties on Harbor Road, adjacent to the Trefz lot or in close proximity to it, who are opposed to the granting of the permit.

A public hearing on the application was held by the commission on October 20, 1983. The matter was thereafter continued on the agenda of the commission until its meeting of December 15, 1983, when it was "approved with the conditions of the October 14, 1983, recommendations of the Town Conservation staff, and with the conditions that the site plan indicate no building extension beyond the wharf retaining wall, and that

a revised property map be submitted to show only those portions of the property not in question, i.e., all land above the mean high water line."

The conditional permit contained the following relevant provisions: "I. REGULATED AREA INVOLVED. The regulated area consists of Southport Harbor, the southernmost extent of the Mill River with its concomitant 144' setback. The entire property borders the Harbor and is contained within the setback; however, no wetlands soils are located on the land area at the site. Soil on site is predominantly fill. The property currently maintains wooden ramped walkways over the River, a floating dock, and a small scale lobster harvesting operation. . . . III. ANTICIPATED IMPACT. . . . *There may be a significant loss of view of the Harbor by the adjacent property owners. This proposal will also displace the existing lobster fishery. From an aesthetic point of view, this proposal is a particularly intensive development of waterfront property, and the applicant has proposed no compensatory activities to ameliorate the loss of unobstructed visual harbor contact."* (Emphasis added.)

The plaintiffs appealed to the Superior Court from this decision under the provisions of General Statutes § 22a-43 of the IWWA and General Statutes § 4-183 of the Uniform Administrative Procedure Act. They alleged to be aggrieved by the decision of the commission because the proposed regulated activities will result in: (1) obstruction of their view of the harbor; (2) loss of recreation contrary to § 6.1.4.5 of the town's inland wetlands and watercourses regulations; (3) diminution in value of their properties; (4) traffic congestion; (5) damage to their aesthetic sensibilities contrary to § 6.1.4.5 of the regulations; (6) damage to the environmental and ecological stability of their neighborhood contrary to § 6.1.4.6 of the regulations; and

(7) destruction of the scenic and historic values of their neighborhood contrary to §§ 1.1 and 2.14.6 of the regulations.

At the court hearing on the plaintiffs' appeal, the defendants challenged the claims of aggrievement. After hearing the plaintiffs' supporting evidence, the court found that they did not sustain their burden of proving aggrievement. In its memorandum of decision, the court, citing *Bell* v. *Planning & Zoning Commission,* 174 Conn. 493, 495–96, 391 A.2d 154 (1978), held that "aggrievement requires a showing that the plaintiffs have a specific, personal and legal interest in the subject matter of the decision and that they be specially and injuriously affected in property or other legal rights as distinguished from general interest as members of the community."

As to the plaintiffs' various claims and proof of aggrievement, the only finding relative to this evidence, which constituted the court's sole basis for its conclusion that the plaintiffs failed to prove aggrievement, was expressed as follows: "This court has reservations and finds the claim that the mere construction of a building which might partially interfere with the view of neighboring landowners significantly depreciates the value of their properties to be highly speculative." In this brief conclusion as to the plaintiffs' evidence and claims of law, the court erred.

The question of aggrievement is one of fact to be determined by the trial court. The court's conclusions, however, will be found to be erroneous if they violate law, logic or reason or are inconsistent with the subordinate facts. *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 491, 400 A.2d 726 (1978).

The IWWA is a segment of title 22a of the General Statutes, entitled "Environmental Protection," which describes its scheme. The policy for the achievement

of such purpose is declared in § 22a-1 in pertinent part as follows: "[T]he policy of the state of Connecticut is to conserve, improve and protect its natural resources and environment and to . . . manage the basic resources of air, land and water to the end that the state may fulfill its responsibility as trustee of the environment for the present and future generations." The IWWA is a portion of the state's environmental trust for the benefit of its citizens. General Statutes § 22a-36. Reciprocally, the people of our state have a right to preserve their trust from a breach by the state or any of its municipalities to whom its trusteeship has been delegated. See General Statutes § 22a-42 (authorizing establishment of inland wetlands and watercourses agencies by municipalities).

The basic purpose of the act is expressed in § 22a-36 as follows: "It is, therefore, the purpose of sections 22a-36 to 22a-45, inclusive, to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by . . . preventing damage from erosion, turbidity or siltation; preventing loss of fish and other beneficial aquatic organisms, wildlife and vegetation and the destruction of the natural habitats thereof . . . protecting the quality of wetlands and watercourses for their conservation, economic, aesthetic, recreational and other public and private uses and values . . . by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn." This specific purpose has been adopted as part of the Wetlands and Watercourses Regulations of the Town of Fairfield § 1.1.

The Commission's inland wetlands and watercourses regulations, as relevant here, provide: "6.1 The Agency shall consider the following in making its final decision on a permit application: 6.1.4 All relevant facts and circumstances, including but not limited to the following: . . . 6.1.4.4 Irreversible and irretrievable commitments of resources which would be involved in the proposed activity. This recognizes that the inland wetlands and watercourses of the Town of Fairfield . . . may be irreversibly destroyed by deposition, filling and removal of material, by the diversion or obstruction of water flow, and by the erection of structures and other uses. 6.1.4.5 The character and degree of injury to, or interference with, safety, health or the reasonable use of property which would be caused or threatened. This includes recognition of potential damage from erosion, turbidity, or siltation, loss of fish and other beneficial aquatic organisms, wildlife and vegetation; and the dangers of flooding and pollution; and destruction of the economic, aesthetic, recreational and other public and private uses and values of wetland and watercourses. 6.1.4.6 The suitability of such action to the area for which it is proposed. This requires the Agency to balance the need for economic growth of the Town and the use of its land, with the need to protect its environment and ecology for the people of Fairfield and the benefit of generations yet unborn."

Although in considering an application for a permit to engage in any regulated activity a local inland wetlands and watercourses agency under both the IWWA and its regulations must take into account the environmental impact of the proposed project, it is the impact on the regulated area that is pertinent, and not the environmental impact in general. *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 250, 470 A.2d 1214 (1984). Any aggrievement claimed on appeal from the grant of a permit for regulated activi-

ties must, therefore, arise from or relate to their impact upon the environmental factors required to be considered by the agency under the act and its regulations. Any claimed depreciation or loss of value of real estate must result from such environmental impact. Additional claims of aggrievement may arise from the environmental impact of the permitted activities on the regulated area.

Aggrievement is established if there is a *possibility,* as distinguished from a certainty, that some legally protected interest has been adversely affected. *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 530, 525 A.2d 940 (1987).

Environmental matters provide a new breadth to claims of aggrievement, one created by the governmental trusteeship of the environment for the benefit of the public. Monetary loss, such as was the sole consideration of the trial court here, is not the complete measure of aggrievement in environmental appeals and judicial review. Although not relied on here, participation of the public in environmental proceedings, and in any judicial review of such matters, is statutorily allowed by General Statutes § 22a-19 (a), which provides that "any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." *Connecticut Fund for the Environment, Inc.* v. *Stamford,* supra, 248 n.2; *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 490. An intervenor under § 22a-19 becomes a proper party in the administrative proceeding and has statutory standing to appeal for the limited purpose of raising

environmental issues. *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra.

Although *Mystic Marinelife* concerned the interrelationship between classical aggrievement and statutory aggrievement under § 22a-19 for the limited purpose of raising certain environmental issues, its discussion is relevant to the question now under consideration, namely, the reach of classical aggrievement for judicial review under General Statutes § 22a-43 (a) of the IWWA and § 4-183 (a) of the Uniform Administrative Procedure Act on environmental issues arising from regulated activities allowed by an inland wetlands agency. "The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, 'the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision.' *Nader* v. *Altermatt,* 166 Conn. 43, 51, 347 A.2d 89 [1974], and cases cited therein." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 493. The "interest" which may be the subject of aggrievement need not be confined to an interest in real property. Id., 496. It may also be a legally protected interest under the IWWA and local inland wetlands and watercourses agency regulations. See id.

This well established rule of aggrievement applies to the statutory scheme under which the appeal here was taken pursuant to §§ 22a-43 (a) and 4-183 (a). See *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 495. To be aggrieved within the provision of § 22a-43 (a) requires that property rights be adversely affected "by

any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the [regulating authority]. . . ."

In *Mystic Marinelife* the Supreme Court upheld the lower court's conclusion that Mystic Seaport lacked classical aggrievement. First, the trial court correctly found no diminution of the value of its abutting property by the proposed structures. Second, on the alleged environmental impact upon its property of greater shoaling by the activity allowed by the permit, the Supreme Court observed: "Shoaling was not even alleged in the substituted complaint as an element of any asserted aggrievement. Mystic Seaport does not refer to any evidence of shoaling offered to the trial court on the issue of aggrievement." Id., 498.

In the case before us, the commission in its decision specifically found the following anticipated environmental impact from the permitted regulated activities: "There may be a significant loss of view of the Harbor by the adjacent property owners. This proposal will also displace the existing lobster fishery. From an aesthetic point of view, this proposal is a particularly intensive development of waterfront property, and the applicant has proposed no compensatory activities to ameliorate the loss of unobstructed visual Harbor contact." These stated injurious consequences of the permitted activities were alleged as claims of aggrievement by the plaintiffs in their complaint. While a transcript of the trial testimony has not been supplied with the record in this case, that evidence thereon was submitted to the court is confirmed by its memorandum of decision as follows: "Both during the public hearing and the hearing on aggrievement before this court, the plaintiffs expressed sincere concern that the granting of this application would result in the destruction of a panoramic view of a beautiful and tranquil harbor, the loss of historic and aesthetic values and a diminution

of the opportunity of citizens to seek serenity and spiritual renewal from the simple enjoyment of an unencumbered view of a unique vista. The court cannot and certainly does not wish to minimize the importance of such considerations."

Notwithstanding such evidentiary recognition of the plaintiffs' claims of aggrievement, as well as the commission's anticipated environmental impact upon which they are based, the court failed to make any findings or conclusions therefrom concerning the plaintiffs' asserted aggrievement. The court's sole finding to support its conclusion of lack of aggrievement was the following: "This Court has reservations and finds the claim that the mere construction of a building which might partially interfere with the view of neighboring landowners significantly depreciates the value of their properties to be highly speculative." In so limiting its finding, the court erred in the standard of aggrievement that it applied in this case. The court should have considered the plaintiffs' claims and evidence of aggrievement in relation to the commission's anticipated environmental impact for the purpose of making findings thereon and drawing its conclusions therefrom as to the plaintiffs' aggrievement. For that reason, the case should be remanded for a rehearing on the plaintiffs' claims of aggrievement.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.