[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Jay Shaw, Myra Shaw, William Hill, and Robert Hill (co-executors of Samuel E. Hill's estate), appeal a decision of the defendant, the Redding Zoning Board of Appeals, granting the Redding Country Club its application for a variance from the zoning regulations. Also named as a defendant is the Redding Country Club. The Zoning Board acted pursuant to sections 8-5 and8-6 of the General Statutes. The plaintiffs appeal pursuant to section 8-8(b) of the General Statutes.
PROCEDURAL HISTORY
The Redding Zoning Board of Appeals ("Zoning Board") granted the Redding Country Club ("Country Club") a variance from its regulations on January 18, 1993. (ROR, 8.) Pursuant to General Statutes, Sec. 8-8(e), on February 5, 1994, the plaintiffs served the Zoning Board by leaving a true and attested copy of the original writ, summons, citation, bond and complaint with John Roche, chairman of the Zoning Board and Diane Knapp, clerk of the Zoning Board. Pursuant to General Statutes, Secs. 8-8(e) and (f), on February 7, 1994, the plaintiffs served Patricia Creigh, Town Clerk of the Town of Redding; and H. Jalmer Granskog, Statutory Agent for Service of Process for the Redding Country Club. ("Sheriff's Returns".) Pursuant to General Statutes 8-8(h), the plaintiffs secured a bond dated February 3, 1994. The plaintiffs filed their appeal with the clerk of the Superior Court on February 23, 1994.[1]
On November 14, 1994, the plaintiffs filed a motion to substitute William Hill and Robert Hill for their deceased father Samuel E. Hill, which motion was granted.
The plaintiffs filed a brief in support of their appeal on May 6, 1994. The defendant, Zoning Board, filed a reply brief on May 18, 1994. The defendant, Country Club, filed a reply brief on June 3, 1994.
FACTS CT Page 2548
On December 22, 1993, the Country Club filed an application for a variance from the Zoning Regulations of the Town of Redding with the Zoning Board. (ROR, 1, 2, 10.) The Zoning Board approved the Country Club's application on January 18, 1994. (ROR, 8.)
The regulation at issue is section 5.3.6(f), which states that "[f]ree standing light standards in Residential zones shall be limited to a maximum height of twelve (12) feet above ground level at the base." (ROR, 10.) The variance granted from this regulation permits the Country Club to replace the lighting on its paddle tennis courts and on two of its outdoor tennis courts. (ROR, 8.) The new lights — at 24 feet on the paddle tennis courts and at 20 feet on the tennis courts — will exceed the 12 foot height permitted by the regulations. (ROR, 8; 9, pp. 8-9; 10.) For the tennis courts, the variance granted by the Zoning Board includes several stipulations such as only allowing the new lights on the two courts that currently have lights, an "automatic device" to turn the lights off at 10:30 p.m., and vegetation screenage to be in place before the new lights are used. (ROR, 8.) The Shaws are concerned with the lights only on the tennis courts. (ROR, 9, pp. 26-27.) The record does not indicate whether the deceased, Samuel E. Hill, was concerned or whether his sons are concerned with the lights on the paddle tennis courts, on the tennis courts, or on all the courts.
The Country Club was founded when the Redding Planning Commission approved a Special Permit Application on June 21, 1966. (ROR, 3.) Lighting was thereafter installed. On February 1, 1986, the Town of Redding implemented its "completely revised zoning regulations." (ROR, 10.) The precise date of the original lighting on the tennis courts is unknown but does pre-date the 1986 revisions of the regulations. (ROR, 9, pp. 5, 8-9.)
JURISDICTION
A. Aggrievement
"The question of aggrievement is one of fact to be determined by the trial court." Glendenning v. ConservationCommission, 12 Conn. App. 47, 50, 529 A.2d 727 (1987). The plaintiff must bear the burden of demonstrating aggrievement.Zoning Board v. Planning Zoning Commission, 27 Conn. App. 297,300, 605 A.2d 885 (1992). There are two kinds of aggrievement, statutory and classical. Cole v. Planning Zoning Commission, 30 Conn. App. 511, 514, 620 A.2d 1324
CT Page 2549 (1993).
Regarding statutory aggrievement, General Statutes, Sec. 8-8
sets forth the requirements of aggrievement in appeals from a zoning board to the Superior Court. An "`[a]ggrieved person' means a person aggrieved by a decision of a board. . . . In the . . . decision by a . . . zoning board of appeals, `aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes, Sec. 8-8 (a)(1).
In the present case, the plaintiffs allege aggrievement by stating that "Jay Shaw and Myra Shaw own and occupy property located at 125 Lonetown Road in Redding, which property adjoins and is within 100 feet of the subject property" and that "Samuel E. Hill owns and occupies property known as Warrups Farm located at John Read Road in Redding, which property adjoins and is within 100 feet of the subject property."[2] (Appeal, pars. 11, 12, 13, 14.)
The court may rely on record evidence to make its finding of aggrievement. Hall v. Planning Commission, 181 Conn. 442,444-45, 435 A.2d 975 (1980). The court finds the Shaws to be statutorily aggrieved. The court finds Samuel E. Hill and therefore the substitute plaintiffs, his sons, to be statutorily aggrieved.
B. Timeliness
General Statutes, Sec. 8-8(b) states that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." General Statutes, Sec. 8-8(b) further states that an appeal is commenced by service of process, and that process must be served "within fifteen days from the date that notice of the decision was published as required by the general statutes." The record neither contains a copy of publication of the Zoning Board's decision nor mentions that such publication was done.
The fifteen day period for service of process must be observed with respect to the "chairman or clerk of the board" and the "clerk of the municipality." General Statutes, Sec. 8-8(e). Failure to observe the fifteen day period with respect to the "person who petitioned the board in the proceeding . . . . shall CT Page 2550 not deprive the court of jurisdiction over the appeal." General Statutes, Sec. 8-8(f).
On February 5, 1994, the plaintiffs served John Roche, Chairman of the Zoning Board; and Diane Knapp, Clerk of the Zoning Board. (Sheriff's Returns.) On February 7, 1994, the plaintiffs served Patricia Creigh, Town Clerk of the Town of Redding; and H. Jalmer Granskog, Statutory Agent for Service of Process for Redding Country Club. (Sheriff's Returns.) Because the date of publication of the Zoning Board's notice of its decision was January 27, 1994, the court finds that the appeal was timely taken.
SCOPE OF REVIEW
The "traditional and long-standing scope of review" for zoning appeals is that the "court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations."Caserta v. Zoning Board of Appeals, 226 Conn. 80,86-87, 626 A.2d 744 (1993). "[T]he proper focus of a reviewing court is on the decision of the zoning agency and, with regard to its factual determinations, on the evidence before it that supports, rather than contradicts, its decision." Id., 87.
If the zoning board did not supply its reasons for its decision, then the court shall "`search the entire record to find a basis for the . . . [zoning board's decision].'" ProtectHamden/North Haven, v. Planning and Zoning, 220 Conn. 527,544-45, 600 A.2d 757 (1991). The zoning board's decision must be sustained if even one of the stated reasons in the record supports it sufficiently. Iannucci v. Zoning Board ofAppeals, 25 Conn. App. 85, 89, 592 A.2d 970 (1991); R.B. Kent Son, Inc. v. Planning Commission, 21 Conn. App. 370,373, 573 A.2d 760 (1990). The zoning board's decision also "must be reasonably supported by evidence in the record."Kelly v. Zoning Board of Appeals, 21 Conn. App. 594,598, 575 A.2d 249 (1990). The burden of proof to show that the zoning board's decision was improper rests with the party seeking to overturn the decision. Francini v. Zoning Board ofAppeals, 228 Conn. 785, 791, 639 A.2d 519 (1994).
The plaintiffs appeal on the following grounds that the "Board acted illegally, arbitrarily, capriciously and in abuse of CT Page 2551 its discretion" because there was no hardship demonstrated, that there was no hardship, that the neighboring residential properties were not protected from adverse effects of the decision, that there is no support in the record for the decision, and that the decision is "otherwise in error." (Appeal, par. 9.)
General Statutes, Sec. 8-6(a)(3)[3] gives a zoning board of appeals the right to grant variances. A zoning board "has wide discretion to grant variances." Burlington v. Jencik,168 Conn. 506, 509, 362 A.2d 1338 (1975); Delvecchio v.Zoning Board of Appeals, Superior Court, Judicial District of New London at New London, Docket No. 52 53 64 (January 26, 1994, Hurley, J.). A variance "`authorizes the landowner to use his property in a manner prohibited by the regulations.'"Wnuk v. Zoning Board of Appeals, 225 Conn. 691, 697,626 A.2d 698 (1993); Fenton v. West Haven Zoning Board ofAppeals, Superior Court, Judicial District of New Haven at New Haven, Docket No. 34 97 98 (March 3, 1994, Booth, J.). A request for a variance asserts that what is requested is not allowed under the regulations and asks that relief from compliance with the regulations be granted. Wnuk v. Zoning Board ofAppeals, supra, 697.
For a zoning board of appeals to grant a variance under section 8-6(a)(3), two requirements must be met: "`(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan.'"[4] Francini v. Zoning Board ofAppeals, supra, 228 Conn. 790; Zarembski v. EastonZoning Board, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 30 53 67 (January 25, 1994, Fuller, J.). "`It is well settled that the hardship must be different in kind from that generally affecting properties in the same zoning district. . . .'" Francini v. Zoning Board of Appeals,
supra. The hardship must be "unique or unusual." Zarembskiv. Easton Zoning Board, supra. There must be "`some peculiar characteristic . . . of [the] property . . . [so that the] strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone.'" Kaeser v. Zoning Board ofAppeals 218 Conn. 438, 445, 589 A.2d 1229 (1991). "Proof of hardship is, therefore, a condition precedent to the granting of a CT Page 2552 variance, and such hardship must arise from the circumstances or conditions beyond the applicant's control." Eagan v. Zoning Board ofAppeals, 20 Conn. App. 561, 563, 568 A.2d 811 (1990). Neither "`[s]elf-inflicted [n]or self-created hardship . . . is . . . considered proper grounds for a variance.'" Abel v. Zoning Boards ofAppeals, 172 Conn. 286, 289, 374 A.2d 227 (1977). It is the burden of the applicant to demonstrate the existence of a hardship. Pike v. Zoning Board of Appeals, 31 Conn. App. 270,274, 624 A.2d 909 (1993).
The plaintiffs argue that the Country Club did not demonstrate a hardship and so the Zoning Board's decision was "without a proper legal basis." (Plaintiffs' Brief, pp. 5, 10.) The plaintiffs argue that the Country Club must demonstrate a "tennis hardship." (Plaintiffs' Brief, p. 6.) The plaintiffs argue that the Zoning Board "ruled" that there was no hardship. (Plaintiffs' Brief, p. 9.)
The court finds that the record does not reflect a Zoning Board ruling of no hardship. The court further finds that the plaintiffs' source, cited in their brief, for their argument that the Zoning Board ruled that there was no hardship; (ROR, 9, p. 61); does not reflect a Zoning Board ruling of no hardship. To the contrary, the Zoning Board heard from the Country Club's lawyer that "the safety of the players" is "compromised by the lighting system that is in place and . . . [the safety issue] would be corrected by the new lighting system." (ROR, 9, p. 15.) Two other people, one a neighbor of the deceased plaintiff, Samuel E. Hill, and the other a member of the Country Club, also testified that the current lights on the tennis courts are unsafe. (ROR, 9, pp. 43-44, 45.) The Zoning Board heard from the Country Club's expert that the United States Tennis Association uses the 20 foot light height. (ROR, 9, p. 16.) The Zoning Board discussed the fact that the Country Club could not be considered for an official tennis association tournament unless the lights are 20 feet high. (ROR, 9, p. 60.) Zoning Board members themselves commented that the 12 foot height limit for lights was extreme for lighting tennis courts; (ROR, 9, p. 61.); and encourages glare. (ROR, 9, p. 67.) Regarding hardship, the Zoning Board heard enough testimony and received enough exhibits in support of the Country Club's experiencing hardship under the regulations to find such a hardship. (ROR, 9, pp. 15-17, 24,43-45, 60-61, 67.)
The plaintiffs argue that the Country Club's desire for CT Page 2553 lighted tennis courts in order to have night tennis points to a self-created hardship. (Plaintiffs' Brief, p. 5.) To the contrary, the record reflects that the Country Club had 15 foot lights on its tennis courts before the promulgation of the 1986 regulations, which made lights over 12 feet illegal. (ROR, 9, pp. 22-24.) The court finds that the passage of the 1986 regulation created the Country Club's difficulty. The court finds that the regulations were written for a residential neighborhood and that the new, higher lights will allow the Country Club to have less of an impact on that neighborhood.
The plaintiffs further argue that the lighting "may adversely affect livestock and other wildlife on the farm property" of plaintiff Hill; (Plaintiffs' Brief, p. 8); however, the court finds that there was no evidence or testimony to support this argument.
The plaintiffs argue that the Country Club has illegal lights, never received approval for its current lights, and now seeks to both legalize existing lights and get permission to erect more lights that are illegal under the current regulations. (Plaintiffs' Brief, p. 6.) The court finds that the 1966 special permit for the Country Club specifically authorized outdoor lighting. (ROR, 3, par. 6.) The Country Club was not required to obtain approval for its existing lights because such lights were permitted under the regulations in existence at the time they were installed. The Country Club seeks to replace outdated lights; (ROR, 9, p. 10); with lights that it claims will create less glare and will better illuminate the courts. (ROR, 9, pp. 67-68.)
The plaintiffs argue that the decision was made in haste due to a lack of information about the "brightness" of the current lighting and due to the Zoning Board members not visiting the Shaws' house. (Plaintiffs' Brief, p. 11.) Thus, the plaintiffs conclude that the decision was "arbitrary and capricious and an abuse of its discretion and . . . [the Zoning Board's] decision should be stricken." (Plaintiffs' Brief, p. 13.) The record reflects that the Zoning Board did receive documentary evidence discussing the so-called brightness of the proposed lights. (ROR, 5, 6, 7.)
In its brief, the defendant, Zoning Board, argues that it did find a hardship and that its finding is supported by the record. (Zoning Board's Brief, p. 6.) The Zoning Board further argues CT Page 2554 that the Country Club's hardship was created due to passage of the regulation and not due to its own actions. (Zoning Board's Brief, pp. 6-8.) The Zoning Board also argued that it would be arbitrary and unjust for it to restrict the Country Club to inadequate lighting when the proposed lighting would reduce offsite glare. (Zoning Board's Brief, p. 9.)
In its brief, the defendant, Country Club, corrects seven of the plaintiffs' misstatements of facts.[5] (Country Club's Brief, pp. 4-11.) The Country Club distinguished the cases cited by the plaintiffs. (Country Club's Brief, pp. 25-28.) The Country Club argues that the variance does not affect substantially the comprehensive zoning plan. (Country Club's Brief, pp. 14-17.) The Country Club argues that the hardship it faces under the regulation is unusual and unnecessary to the carrying out of the general purpose of the zoning plan because the regulations conflict, because the present lights interfere with players' safety, because the new lights will create less glare and light spillage, and because the United States Tennis Association standard for the height of lights for night play is 20 feet. (Country Club's Brief, pp. 17-21.) The Country Club argues that only the Zoning Board is to find whether or not there is a hardship and that other people's conclusions stated for the record on the issue of hardship are not determinative. (Country Club's Brief, p. 11.) The Country Club argues that these hardships are unique to it because it is the only country club covered by the regulations. (Country Club's Brief, p. 21.) The Country Club argues that the Zoning Board did not act in haste in granting the variance because it demonstrated that it understood the issues facing it. (Country Club's Brief, pp. 31-32.)
"[I]n matters of technical complexity . . . a lay commission without expertise in the area may not substitute its own judgment for contrary expert testimony." Bradley v. Inland WetlandsAgency, 28 Conn. App. 48, 53, 609, A.2d 1043 (1992). A zoning board must not "disregard" the only expert evidence if its members do not have their own expertise. Id., 54. A zoning board also must not "completely disregard" documentary evidence submitted to it. Id., 54 "[T]he credibility of witnesses is a matter within the province of the administrative agency" which is not required to believe any witness. Id., 53
The plaintiffs offered no testimony or evidence to support their argument that the new lights would be brighter. The Country Club did offer evidence and testimony that "the amount of lumens, which is a measure of surface illumination, with the proposed new CT Page 2555 lights is half the lumens with the existing lights." (Country Club's Brief, p. 3.) The Country Club supplied an expert witness, George R. Nolan of New England Tennis, Inc., to support its argument that the new lights will have less of an impact on the area than the old lights. (Country Club's Brief, p. 3.) According to expert testimony, the higher light poles will direct the light to shine on the courts, with less light spilling off of the courts. (ROR, 9, pp. 10-15.) The Country Club submitted a list of the current lights and the new lights to be erected; the list compared the total lumens and concluded that the old lights had 845,000 total lumens and the new lights would have 429,600 total lumens. (ROR, 7.)
The court finds that the Zoning Board was correct in adhering to the expert testimony before it. It is within the Zoning Board's province to believe the Country Club's expert's testimony over Jay and Myra Shaw's testimony. The Zoning Board was correct in adhering to the documentary evidence submitted to it. The court finds that having new lights that create less glare will not affect substantially the comprehensive zoning plan. Rather, the court finds that having less glare will be an improvement.
The court finds that requiring the Country Club to adhere to the regulation would cause unusual hardship to the Country Club. The court finds that making the Country Club adhere to the regulation is not only unnecessary to the carrying out of the general purpose of the zoning plan but also detrimental to the general purpose of the zoning plan.
The Zoning Board's decision must be sustained if even one reason, which the court may search for in the record, supports it. Protect Hamden/North Haven v. Planning and Zoning,
supra, 544-45; Iannucci v. Zoning Board of Appeals,
supra, 89. It is the plaintiffs' burden to show that the Zoning Board's decision was improper. See Francini v. Zoning Boardof Appeals, supra, 791. The court finds that there is support in the record for the Zoning Board's decision and that the plaintiffs have failed to meet their burden of showing that the decision was improper.
The court finds that the Zoning Board's decision was not arbitrary. Rather, the Zoning Board's decision is supported by expert testimony and evidence in the record.
For the foregoing reasons, the appeal is dismissed. CT Page 2556
Riefberg, J. CT Page 2557
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]