[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF APPEAL
The plaintiff, Sacred Heart University, Inc. (Sacred Heart), appeals from the decision of the defendant, Inland Wetlands and Watercourses Agency of the City of Bridgeport (Agency), in which the Agency denied Sacred Heart's application for the development of certain real property located at 5252 Park Avenue, Bridgeport.
 BACKGROUND
Sacred Heart is the contract purchaser of certain real property located at 5252 Park Ave., Bridgeport, which property is currently owned by Ethel T. Herman.[1] By application signed December 22, 1995, Sacred Heart submitted a proposal for permission to alter the existing single family residence on the site and to construct a dormitory and a parking lot for its students.
On March 11, 1996, the Agency held a public hearing on Sacred Heart's application. (ROR, exhibit a.) At that hearing, Sacred Heart presented the testimony of four experts. At the conclusion of the March 11, 1996 hearing, the Agency decided to continue the hearing on Sacred Heart's application. CT Page 13468-ar
On April 8, 1996, the Agency held the continuance in order to discuss the following issues: 1) clarification of the street address of the parcels; 2) review of drainage plans by the City Engineer and comment regarding the adequacy of the proposed catch basins within the proposed parking lot; and 3) receipt of any further comments from the Fairfield Conservation Commission regarding the drainage aspects of the proposal.
Following the close of the April 8, 1996 hearing, six members of the Agency voted to deny Sacred Heart's application, while two members were in favor of approval. The Agency's reasons for denying Sacred Heart's application pursuant to Bridgeport Inland Wetlands and Watercourses Regulations § 10.2 were that the application failed to establish the following standards and criteria: 1) alternatives to the proposed action; 2) the character and degree of health and safety, or the reasonable use of the property; 3) the suitability of the activity to the area for which it is proposed; and 4) the long-term effects of the activity to the environment and surrounding area. (ROR, exhibit yy.) Sacred Heart now appeals from that decision.
 JURISDICTION
"It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute." Munhall v. Inland WetlandsCommission, 221 Conn. 46, 50, 602 A.2d 566 (1992).
Aggrievement
"Pleading and proof that the plaintiffs are aggrieved within the meaning of the statute is a prerequisite to the trial court's jurisdiction over the subject matter of the appeal." (Internal quotation marks omitted.) Munhall v. Inland Wetlands Commission, supra, 221 Conn. 50. "A finding of aggrievement requires that property rights be adversely affected by an order, authorization or decision of the commission[er] . . . Aggrievement is an issue of fact . . . and credibility is for the trier of facts." (Citation omitted; internal quotation marks omitted.)Red Hill Coalition v. Conservation Commission, 212 Conn. 710, 716,563 A.2d 1339 (1989).
"General Statutes §§ 22a-36 through 22a-45 constitute the Inland Wetlands and Watercourses Act. . . ." (Citation omitted; internal quotation marks omitted.) Pomazi v. Conservation Commission, 220 Conn. 476,482, 600 A.2d 320 (1991). General Statutes § 22a-43 provides in CT Page 13468-as relevant part: "The commissioner or any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to22a-45, inclusive, by the commissioner, district or municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action made pursuant to said sections may . . . appeal to the superior court for the judicial district where the land affected is located."
In the present case, Sacred Heart is the contract purchaser of the property that is the subject of the Agency's denial. At the hearing before the court on March 23, 1999, Sacred Heart presented its contract for sale entitled "Option and Purchase and Sale Agreement." (Plaintiff's Exhibit A.) Accordingly, Sacred Heart is statutorily aggrieved pursuant to General Statutes § 22a-43.
Timeliness and Service of Process
Section 22a-43 further provides, in part, that an appeal may be taken "within the time specified in subsection (b) of section 8-8 from the publication of such regulation, or decision or action. . . . Notice of such appeal shall be served upon the inland wetlands agency and the commissioner." General Statutes § 8-8 (b) provides, in pertinent part, that an "appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes."
The Agency denied the application on April 8, 1996. The agency admits that "[T]he Agency's decision was duly published in the Connecticut Post
on April 17, 1996." Sacred Heart served process upon the Chairperson of the Inland Wetlands and Watercourses Agency of the City of Bridgeport on May 1, 1996 and served the Commissioner of the Environmental Protection Agency on May 2, 1996. Therefore, this appeal was commenced in a timely manner by service of process upon the proper parties.
 SCOPE OF REVIEW
It is well settled that the plaintiff must prove that the record does not contain substantial evidence to support the agency's decision. "In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does CT Page 13468-at not exist in the record as a whole to support the agency's decision." (Citations omitted.) Samperi v. Inland Wetlands Agency, 226 Conn. 579,587, 628 A.2d 1286 (1993).
"In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . ." (Internal quotation marks omitted.) Samperiv. Inland Wetlands Agency, supra, 226 Conn. 587-88.
"In Kaeser v. Conservation Commission, 20 Conn. App. 309, 314,567 A.2d 383 (1989), the court held that the substantial evidence rule does not call for a roll call of qualified experts, merely that [a]n agency decision must be based on reliable evidence made public and the applicant must have an opportunity to respond to agency concerns." (Emphasis in original; internal quotation marks omitted.) Strong v. Conservation Commission, 28 Conn. App. 435, 440, 611 A.2d 427 (1992).
"In Tanner v. Conservation Commission, 15 Conn. App. 336, 544 A.2d 258
(1988), the plaintiff's four experts agreed that the proposed project could be built on the site. This court affirmed the trial court's ruling that the commission, in dealing with complex issues, could not ignore the testimony of the expert witnesses and rely solely on its own insight. We find that there was no substantial evidence since there was an absolute disregard of the unanimous contrary expert opinion." (Internal quotation marks omitted.) Strong v. Conservation Commission, supra,28 Conn. App. 440-41.
"In Huck v. Inland Wetlands Watercourses Agency, . . . the plaintiff offered four expert witnesses to testify that the proposal would have no adverse impact on the wetlands; the agency did not present any expert testimony in rebuttal. In that case, however, the court found that there was other substantial evidence to support the agency's denial of the permit. . . . The agency did not whimsically ignore substantial expert testimony nor was its action the result of the prejudicial desire of the [agency] to have [the] plaintiff's land remain in a natural state. . . . The agency . . . reasonably resolved fairly debatable questions based on CT Page 13468-au substantial evidence." (Citations omitted; internal quotation marks omitted.) Strong v. Conservation Commission, supra, 28 Conn. App. 441.
"In Feinson v. Conservation Commission, [180 Conn. 421, 425, 429 A.2d 910
(1980)], the only expert witness was the plaintiff's design engineer; no public official or member of the public contested the application. The commission disregarded the expert's testimony and based its decision entirely on the special knowledge, judgment, and concerns of its own. It brought these factors into the process, however, after the public hearing and at a time when the plaintiff could not contest or rebut them. The court held that the commission had acted in a manner that placed its data base beyond the plaintiff's scrutiny and therefore acted without substantial evidence, and arbitrarily." (Internal quotation marks omitted.) Strong v. Conservation Commission, supra, 28 Conn. App. 441.
"These four cases, taken together, establish that an administrative agency must base its decision on substantial reliable evidence in the record. It may not base its decision on the special concerns and insights of its members unless it has given the applicant an opportunity to respond to them. Finally, an agency cannot capriciously ignore the testimony of expert witnesses." Strong v. Conservation Commission,
supra, 28 Conn. App. 441.
 DISCUSSION
The Inland Wetlands and Watercourses Agency's authority in considering Sacred Heart's Application was limited to considering the plan's impact on surrounding wetlands and watercourses.
"Under §§ 22a-42 and 22a-42a, any municipality, acting through its legislative body, may authorize or create a board or commission to regulate activities affecting the wetlands and watercourses located within its territorial limits and any such board or commission is authorized to grant, deny or limit any permit for a regulated activity. The commissioner is charged with the duty of licensing regulated activity in the event of a failure of a municipality to exercise its regulatory authority." Connecticut Fund for the Environment Inc. v. Stamford,192 Conn. 247, 249-50, 470 A.2d 1214 (1984).
"The municipal inland agency is authorized to establish the boundaries of inland wetlands and watercourse areas within its jurisdiction. Once such boundaries are established pursuant to procedures set forth in § 22a-42a, no regulated activity shall be conducted within such boundaries without a permit issued by the local agency." Connecticut FundCT Page 13468-avfor the Environment, Inc. v. Stamford, supra, 192 Conn. 250.
"It is apparent from the foregoing that local inland wetland bodies are not little environmental protection agencies. Their environmental authority is limited to the wetland and watercourse area that is subject to their jurisdiction. They have no authority to regulate any activity that is situated outside their jurisdictional limits. Although in considering an application for a permit to engage in any regulated activity a local inland wetland agency must, under § 22a-41, take into account the environmental impact of the proposed project, it is theimpact on the regulated area that is pertinent not the environmentalimpact in general." (Emphasis added.) Connecticut Fund for theEnvironment, Inc v. Stamford, supra, 192 Conn. 250.
These cases make absolutely clear that the Agency was to consider the impact on Wetlands and not the environment in general and additionally that this Agency was not to act as a Zoning Board of Appeals.
Accordingly, in reviewing the proposal only as it related to surrounding wetlands and watercourses, the Agency based its denial on four grounds derived from § 10.2 of the Regulations,[2]
specifically, (1) alternatives to the proposed action; (2) the character and degree of health and safety, or the reasonable use of the property; (3) the suitability of the activity to the area for which it is proposed; and (4) the long-term effects of the activity to the environment and the surrounding area. Sacred Heart appeals, in pertinent part, on the ground that the Agency did not base its denial of the application upon substantial evidence. In response, the Agency argues that given its four reasons for denial, and the record before the court, substantial evidence exists to support its denial. The court will address each ground of the Agency's denial separately and in the above referenced order.
A. ALTERNATIVES
The Agency denied Sacred Heart's application, in part, on the ground that the applicant failed to establish alternatives to the proposed action. Sacred Heart argues that it considered other alternatives and even submitted three alternatives to the Agency. The Agency counters that other uses of the property are more appropriate.[3]
The fundamental flaw in the Agency's argument is that it ignores the express language of the regulation, which provides that the agency consider alternatives "which could feasibly attain the basic objectives of the activity proposed in the application." (Regulations § 10.2 CT Page 13468-aw (b).)
Regulation § 10.2(b) specifically provides: "The alternatives to the proposed action including a consideration of alternatives which might enhance environmental quality or have a less detrimental effect, and which could feasibly attain the basic objectives of the activity proposed in the application. This consideration should include, but is not limited to, the alternative of requiring actions of a different nature which would provide similar benefits with different environmental impacts, such as using a different location for the activity."
Accordingly, in this case the agency was to consider alternative plans which could achieve the basic objective of a dormitory. The record reflects that Sacred Heart submitted several alternative which could achieve the basic objective of a dormitory. For example, at the March 11, 1996 hearing, Mr. Willinger, an attorney for Sacred Heart, asked Paul Bellagamba, the senior engineer from the Kasper Group, the architect engineering firm hired by Sacred Heart, whether alternatives existed. Willinger asked: "Paul for clarification purposes in your testimony that those three alternative plans were rejected in favor of our final plan because our final plan has been engineered to be that no impact on the wetlands as opposed to the other three alternatives which would be more of an impact?" Bellagamba responded: "Yes. As I pointed out the other three impact the wetlands greater. We have tried to eliminate that with our design."
Even Jackie Cocco, a local resident and state representative, as well as an opponent to Sacred Heart's proposal, stated: "First I'd like to commend Sacred Heart University for being noble enough to develop four plans before they came up with one that they felt satisfied this Board."
Additionally, the record demonstrates that the Agency ignored the testimony of all of the experts who found that Sacred Heart's proposal would have no adverse impact upon the wetlands. Sacred Heart presented four experts in support of their application, namely: 1) Joe Kasper, Jr., president of the Kasper Group, the architect engineers for Sacred Heart; 2) Paul Bellagamba, the senior engineer from the Kasper Group; 3) Michael Klein, a biologist and certified professional wetlands scientist; and 4) Cynthia Rabinowitz, a certified soil scientist.
Michael Klein, a biologist and certified soil scientist, stated: "It's my judgment that this proposed site development plan would not have any adverse effect on the wetland[s] based on five specific criteria. One, the development will occur downstream as the only portion of the wetland CT Page 13468-ax have [sic] any significant value, two, no storm water or potentially sedimentary runoff will be discharged to that portion of the wetlands surrounded by moderate density residential development and has been affected by excavation fillings, storm water, discharges and refuse disposal. There's no development within that 25 foot regulatory zone and much of the understory vegetation in the wetland is adapted to a broad range of soil moisture conditions. In other words, I could have saved this long discussion by just saying I agree with your consultant's report." Klein further stated: "In conclusion it's my judgment that there is no significant adverse impact on the wetlands or watercourses on Lot 2 as the result of the proposed development on Lot 1."[4]
Moreover, Cynthia Rabinowitz, a consultant and soil scientist, found that the soil on the location consists of non-wetland soil types which are "generally friable and workable."
Interestingly, the record contains no suggestions of feasible and prudent alternatives offered by the Agency. In its brief, however, the Agency argues that "[c]ommon sense tells us that any of the less intensive uses such as a park, a smaller dormitory or classroom in so far as the height, a convalescent home, a use of the residence for the office of an architect, chiropodist, chiropractor, dentist, lawyer or other professional would all qualify as prudent alternatives which would not have any adverse impact upon the wetlands." The defendant's "common sense" argument is without merit because these alternatives "do not feasibly attain the basic objectives of the activity proposed in the application." (Regulation 10.2(b).)
In sum, the record in the present case reflects that Sacred Heart considered and introduced alternatives to its proposed action, and that the final plan contained in the application before the Agency had the least impact on Wetlands. Accordingly, the Agency's denial of Sacred Heart's application on the ground that the application failed to establish feasible and prudent alternatives was not based upon substantial evidence.
B. HEALTH AND SAFETY OR REASONABLE USE
The Agency also denied the application on the basis of "the character and degree of health and safety, or the reasonable use of the property." Sacred Heart argues that the Agency's rationale is flawed where the Agency contends that the offsite wetlands would be injured by the changes proposed by Sacred Heart or alternatively, that Sacred Heart's proposal CT Page 13468-ay was not a reasonable use of the property. In response, the Agency argues "that this former quiet, modest single-family residential property is now going to house ten floors of students and numerous employees in a once conforming non-intrusive use is, on its face, an indication that it is not a reasonable use of the property, but also is not suitable for the area." The Agency further argues that the proposed mitigation of the harmful effects to the environment is not enough in this case and that the Agency's denial of Sacred Heart's application on this ground is supported by the record.
Regulation § 10-2 (e) provides: "The character and degree of injury to, or interference with, safety, health, or the reasonable use of property, including abutting or downstream property, which would be caused or threatened by the proposed activity, or the creation of conditions which may do so. This includes recognition of potential damage from erosion, turbidity, or siltation, loss of fish and wildlife and their habitat, loss of unique habitat having demonstrable natural, scientific or educational value, loss or diminution of beneficial aquatic organisms and wetland plants, the dangers of flooding and pollution, and the destruction of economic aesthetic, recreational and other public and private uses and values of wetlands and watercourses to the community."
Accordingly, this agency's authority in considering this factor was limited to the impact of the proposal on the surrounding wetlands. Additionally, "[O]ur Supreme Court has stated that "a lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues . . . in disregard of contrary expert testimony. . . .' Feinson v. ConservationCommission, 180 Conn. 421, 429, 429 A.2d 910 (1980). The determination of what constitutes an adverse impact on a wetlands is considered to be a technically complex issue." Milardo v. Inland Wetlands Commission,27 Conn. App. 214, 222, 605 A.2d 869 (1992).
"Feinson makes clear that a lay commission acts without substantial evidence when it relies on its own knowledge and experience concerning technically complex issues. . . . It follows that if the lay commission cannot rely upon its own knowledge and experience in such cases, neither can it rely upon nonexpert evidence from others. . . . [T]he commission may not reject an expert's testimony on a technically sophisticated and complex issue that goes beyond the ordinary knowledge and experience of the trier of fact, unless there is expert testimony available to the commission that will support its decision." (Citations omitted; internal quotation marks omitted.) Kaeser v. Conservation Commission, supra,20 Conn. App. 318 (Berdon, J., concurring). CT Page 13468-az
The record does not contain substantial evidence supporting the Agency's denial on the ground that the application "failed to establish" health and safety or the reasonable use of the property. Here, Sacred Heart offered the opinions of several experts who testified that there would be no adverse effect on the wetlands. Indeed, the record reflects something completely contrary to the defendant's conclusion of adverse effect upon the wetlands, i.e., the record reflects that Sacred Heart's proposal would actually serve to recharge these wetlands.[5]
Moreover, the Fairfield Conservation Commission, who was contacted because of potential downstream drainage concerns, did not object to Sacred Heart's proposal. Indeed, the Fairfield Conservation Commission, acting as the Inland Wetlands Agency, stated in a letter to the Bridgeport Inland Wetlands and Watercourses Agency that: "The Fairfield Inland Wetlands Agency has reviewed the plans, drainage report, and has conducted a detailed field inspection on the proposal of Sacred Heart University for a dormitory on Park Avenue. We found that no wetland soil or watercourse is proposed to be filled or lost for the project. The drainage design has addressed storm water detention for the 2-year through 100-year storm events and no apparent adverse drainage effects will result for the Town of Fairfield."
Just as importantly, the Agency, offered no evidence as to how Sacred Heart's project would harm the wetlands. Indeed, even Judith Slayback, an environmental analyst and the Agency's consultant, determined that Sacred Heart's proposal had no measurable impact upon the surrounding wetlands. At the April 8, 1996 hearing, Clarence Williams, an agency member, asked Ms. Slayback the following question: "Does this project have any impact on inland wetland?" Ms. Slayback responded: "Based on all of our analysis it will not have a measurable impact on wetlands and watercourses."
The Agency did not present any experts in opposition to Sacred Heart's application. Instead, during the March 11, 1996 hearing, three individuals, all of whom were local residents, spoke out against Sacred Heart's proposal, namely: 1) Jackie Cocco, a local resident and state representative from the 127th District; 2) Doreen Nichols, a resident of 5020 Park Avenue; and 3) Brian Philbin, a resident of 3750 Old Town Road. None of these individuals claimed to have any expertise regarding inland wetland issues.
The record simply does not contain any substantial evidence which refutes the findings of the experts. The Agency argues that its findings are based upon substantial evidence, however, the Agency points to no CT Page 13468-ba evidence other than the comments of the above named individuals who, whether or not are they considered experts, only expressed some vague concerns and speculation about the project.[6] These comments certainly do not rise to the level of substantial evidence required to support the Agency's denial.
Because the record does not contain substantial evidence to support the Agency's finding that Sacred Heart's proposal would cause "injury to, or interference with, safety, health or reasonable use of property," the Agency's decision cannot be sustained on that ground.
C. SUITABILITY FOR THE PROPOSED AREA
The Agency also denied the application on the basis that the application failed to establish "[t]he suitability of the activity to the area for which it is proposed" pursuant to regulation 10.2(f). Sacred Heart appeals the Agency's denial on this ground and argues that the Agency's denial pursuant to regulation 10.2(f) is not supported by substantial evidence. Specifically, Sacred Heart argues that the record demonstrates that "the proposal was a permitted use which, based upon the evidence provided to the Agency, would have been at no expense to the environment." Sacred Heart also argues that the city will benefit from its proposal through increased tax revenue. In response, the Agency contends that the placement of a large dormitory, classroom, and parking facility on this property will effect the wetlands and will not suit the proposed development area. The Agency argues that Sacred Heart's proposal disregards the safety and health effects on the area and surrounding wetlands. The Agency further argues that there are less intrusive and more reasonable uses for the property.
Again, the Agency's argument is flawed because it ignores that the Agency is limited to considering the suitability of the activity as it relates to any impact on wetlands. "Although in considering an application for a permit to engage in any regulated activity a local inland wetlands and watercourses agency under both the IWWA and its regulations must take into account the environmental impact of the proposed project, it is the impact on the regulated area that ispertinent, and not the environmental impact in general." (Emphasis added.)Glendenning v. Conservation Commission, 12 Conn. App. 47, 52, 529 A.2d 727
(1987), citing Connecticut Fund for the Environment Inc. v. Stamford,
supra, 192 Conn. 250.
In the present case, several experts presented testimony and reports concluding that Sacred Heart's proposal will have no impact upon the CT Page 13468-bb wetlands. As previously stated, even the Agency's environmental consultant, Judith Slayback, agreed that there would be no measurable impact upon the inland wetlands. Accordingly, the Agency's denial of Sacred Heart's application on the grounds the suitability of the activity to the area is not supported by substantial evidence.
D. ACTIVITY'S LONG-TERM EFFECTS TO THE ENVIRONMENT AND SURROUNDING AREA
Finally, the Agency denied the application because "[t]he long-term effects of the activity to the environment and surrounding area" did not comply with regulation 10.2(c). Sacred Heart appeals the Agency's denial on the ground that its denial is not supported by substantial evidence in the record.
Regulation § 10.2(c) provides: "The relationship between the short-term uses of the environment and the maintenance and enhancement of long-term productivity, including consideration of the extent to which the proposed activity involves trade-offs between short-term environmental gains at the expense of long-term losses, or vice versa, and consideration of the extent to which the proposed action forecloses or predetermines future options." As stated above, "it is the impact on the regulated area that is pertinent, and not the environmental impact in general." Connecticut Fund for the Environment, Inc. v. Stamford, supra,192 Conn. 250.
The record does not contain substantial evidence to support the Agency's conclusion that the long-term effects of the activity would harm the environment and the surrounding area as it relates to the surrounding wetlands. Indeed, the record reflects that all of the experts were in agreement that Sacred Heart's proposal would have no adverse effect upon the surrounding inland wetlands.[7] As previously noted, at the April 8, 1996 hearing,[8] Slayback, when questioned whether Sacred Heart's proposal would have any impact on the wetlands, responded: "Based on all of our analysis it will not have a measurable impact on wetlands and watercourses."
 CONCLUSION
Based on the foregoing, the court sustains Sacred Heart's appeal and remands the case to the Agency to make findings pursuant to Conn. Gen. Stat. § 22a-41 (b) and to consider conditions or modifications. Judgment is entered in favor of the plaintiff
ROGERS, J. SUPERIOR COURT JUDGE CT Page 13468-bc