RED HILL COALITION, INC., ET AL. *v.* CONSERVATION
COMMISSION OF THE TOWN OF GLASTONBURY ET AL.
(13626)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued June 8—decision released August 22, 1989

*Dwight H. Merriam,* with whom were *Brian R. Smith* and *Norma Darshan Brach,* for the appellants (plaintiffs).

*Richard R. Brown,* with whom was *Eric R. Gaynor,* for the appellee (named defendant).

*David F. Sherwood,* for the appellees (defendant Red Hill Development Corporation et al.).

CALLAHAN, J. This is an appeal from a judgment of the Superior Court dismissing the plaintiffs' appeal from the granting of an application for an inland wetlands permit for a proposed subdivision to the defendant Red Hill Development Corporation et al. by the defendant Glastonbury Conservation Commission (commission).[1] The plaintiffs are the Red Hill Coalition, Inc. (coalition), a nonprofit corporation formed to promote its concept of development for the Red Hill section of Glastonbury, Thomas Fitzgerald, a member of the coalition and a landowner whose property abuts the south-

---

[1] The commission was acting as the Glastonbury inland wetlands and watercourses agency.

ern boundary of the proposed subdivision, and Julianne Steffens, president of the coalition and a resident of Glastonbury.

The defendant commission issued an inland wetlands permit to the applicants Red Hill Development Corporation and its principals, Charles Pezzente and John Coccomo, Sr. (applicants), to discharge drainage into a wetland, and to fill a small upland pond and install culverts in a wetlands ravine in connection with the construction of a road on the property in question. The permit was issued on the condition that the applicants provide "reasonable compensation for wetland development or enhancement." The plaintiffs appealed the decision of the Superior Court to the Appellate Court. We transferred the appeal to ourselves pursuant to Practice Book § 4023.

In their appeal the plaintiffs claim that the trial court erred when it determined that: (1) the commission did not exceed its authority when it imposed *off-site* compensation as a condition for the issuance of the wetlands permit; (2) adequate notice was given of the final action taken by the commission; (3) the off-site compensation condition was not overly vague and unenforceable; and (4) the applicants submitted, and the commission considered, alternatives as required by General Statutes § 22a-41.[2]

---

[2] "[General Statutes (Rev. to 1985)] Sec. 22a-41. FACTORS FOR CONSIDERATION OF COMMISSIONER. In carrying out the purposes and policies of sections 22a-36 to 22a-45, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:

"(a) The environmental impact of the proposed action;

"(b) The alternatives to the proposed action;

"(c) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity;

"(d) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;

The relevant facts are as follows. The applicants applied to the commission for a class B[3] inland wetlands permit pursuant to "The Inland Wetlands and Watercourses Act"; General Statutes § 22a-36 et seq. (wetlands act); and § 5 of the Glastonbury Inland Wetland and Watercourse Regulations, to construct a roadway and storm drainage outlets on a site owned by the applicants in an area of South Glastonbury known as Red Hill. The property in question is a fifty acre parcel of land, situated between the Connecticut River and Main Street on which the applicants planned to construct thirty-three single family homes. A ravine containing a small stream runs north and south on the site and a farm pond of approximately one fifth of an acre in size is situated on the southerly boundary of the property to the west of the ravine.[4] A wetlands permit to fill the pond and to install culverts in the ravine was required by the applicants in order to facilitate the construction of a roadway over the wetlands which would provide access to the westerly portion of their property.

On December 2, 1985, the coalition intervened in the proceedings of the commission pursuant to General Statutes § 22a-19 (a).[5] On June 19, 1986, the commission held a public hearing on the application. Subsequently, after public meetings on July 10, 1986, and

"(e) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and

"(f) The suitability or unsuitability of such activity to the area for which it is proposed."

[3] Class B permits are provided for in §§ 5.3 and 5.3.1 of the Glastonbury Inland Wetland and Watercourse Regulations.

[4] An expert employed by the Red Hill Development Corporation indicated that in early July, 1986, the pond was practically dried up with only four inches of water in its center.

[5] General Statutes § 22a-19 (a) provides: "ADMINISTRATIVE PROCEEDINGS. (a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation,

July 24, 1986, the commission approved the application and issued the permit requested by the applicants. The permit was issued subject to a condition that: "The Wetlands Agency approves the elimination of the upland pond because the Agency believes that with the development as proposed in the vicinity the source of water to that pond will be minimized if not completely removed. In exchange for the right to fill in and cross that upland pond, the applicant agrees to provide reasonable compensation for wetland development or enhancement to be determined in the future by a subcommittee of the Wetlands Agency working directly with the applicant and other interested parties in Town to identify, define and seek proper approvals of said compensating activity."

## I

Initially the defendant commission contends that the trial court erred in finding that the plaintiffs had standing to appeal the wetlands issues pursuant to § 22a-19 (a). In addition to standing under § 22a-19 (a), the commission contests the court's conclusion that Fitzgerald, an abutting landowner, had standing based on "the more traditional aggrievement." The trial court's " '[c]onclusions are not erroneous unless they violate law, logic or reason or are inconsistent with the subordinate facts. . . .' *Yale University* v. *New Haven,* 169 Conn. 454, 464, 363 A.2d 1108 [1975]." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 491, 400 A.2d 726 (1978).

In *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, we recognized that a party even if not "classically"

association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

aggrieved may still have statutory standing to appeal an agency's decision. Section 22a-19 (a) allows "any person, partnership, corporation, association, organization or other legal entity" to "intervene as a party" in any "administrative, licensing or other proceeding, and in any judicial review thereof" that "involves conduct which has, or is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

General Statutes § 22a-19 (a) is part of the Environmental Protection Act (EPA). General Statutes § 22a-14 et seq. The purpose of the EPA is "to give private citizens a voice in ensuring that the air, water and other natural resources of the state remain protected, preserved and enhanced, and to provide them with 'an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction.' General Statutes § 22a-15." *Connecticut Water Co.* v. *Beausoleil,* 204 Conn. 38, 44, 526 A.2d 1329 (1987); see also *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 489; *Belford* v. *New Haven,* 170 Conn. 46, 53–54, 364 A.2d 194 (1975). By permitting intervention under § 22a-19 (a), the EPA allows private persons to "intervene in an existing judicial review of an agency action or to initiate an independent declaratory or injunctive action." *Connecticut Water Co.* v. *Beausoleil,* supra, 44–45. An intervening party under § 22a-19 (a), however, may raise only environmental issues. Id., 45; *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 490.

Because the coalition filed a notice of intervention at the commission hearing in accordance with § 22a-19 (a), it doubtless had statutory standing to appeal from the commission's decision for that limited purpose. *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 499. The commission argues, however, that even

if that is so, Steffens and Fitzgerald lacked standing to appeal under § 22a-19 (a) because they did not intervene before the commission. We disagree.

As previously noted, § 22a-19 (a) allows any person to intervene to raise environmental issues in an existing judicial review of an agency action or to initiate an independent declaratory or injunctive action. *Connecticut Water Co.* v. *Beausoleil,* supra, 44–45. Steffens and Fitzgerald satisfied that section by joining the coalition's appeal to the Superior Court. They were not statutorily required to file a notice of intervention before the commission.

The trial court also concluded that the abutting plaintiff, Fitzgerald, in addition to having standing under § 22a-19 (a), was "traditionally" aggrieved. See *Cannavo Enterprises, Inc.* v. *Burns,* 194 Conn. 43, 47, 478 A.2d 601 (1984); *Bakelaar* v. *West Haven,* 193 Conn. 59, 65, 475 A.2d 283 (1984). A finding of aggrievement " 'requires that property rights be adversely affected by an "order, authorization or decision" of the commission[er].' *Sachem's Head Assn.* v. *Lufkin,* 168 Conn. 365, 367, 362 A.2d 519 [1975], citing *Sea Beach Assn., Inc.* v. *Water Resources Commission,* 164 Conn. 90, 94, 318 A.2d 115 [1972]." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 495–96. "Aggrievement is an issue of fact; *Luery* v. *Zoning Board,* 150 Conn. 136, 140, 187 A.2d 247 [1962]; and credibility is for the trier of the facts. *Klein* v. *Chatfield,* 166 Conn. 76, 80, 347 A.2d 58 [1974]." Id., 496; see also *Bakelaar* v. *West Haven,* supra. The finding of the trial court that the plaintiff Fitzgerald was "traditionally" aggrieved will not be disturbed on appeal unless the subordinate facts do not support that finding. *Walls* v. *Planning & Zoning Commission,* 176 Conn. 475, 476, 408 A.2d 252 (1979). From our review of the record we cannot say that the trial court erred when it found that Fitzgerald had, in addition to standing under § 22a-19, "the more traditional aggrievement standing of having a specific, personal

and legal interest in the subject matter of the [commission's] decision. *Glendenning* v. *Conservation Commission,* 12 Conn. App. 47, 54 [529 A.2d 727] (1987)."[6] See General Statutes (Rev. to 1985) § 22a-43 (a).[7]

## II

The plaintiffs contend that the commission exceeded its authority when it imposed "off-site wetlands mitigation" as a condition of its approval of the inland wetlands permit for the Red Hill Development Corporation's proposed subdivision. In this regard the plaintiffs argue that neither the wetlands act nor the Glastonbury Inland Wetland and Watercourse Regulations allow the commission to exchange one wetlands site for the promise to create a new wetlands site elsewhere. On the facts revealed by the record in this case, we disagree.

It is obvious from the record that the commission originally intended, as compensation for the pond to

---

[6] The trial court's finding on the issue of Fitzgerald's aggrievement made it unnecessary for the court to determine the applicability of Public Acts 1987, No. 87-338, § 8 (a), amending General Statutes § 22a-43 (a), which was enacted subsequent to the plaintiffs' appeal but prior to the hearing in the trial court.

[7] General Statutes (Rev. to 1985) § 22a-43 (a) provides: "APPEALS. (a) Any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality may, within fifteen days after publication of such regulation, order, decision or action appeal to the superior court for the judicial district where the land affected is located, and if located in more than one judicial district, to said court in any such judicial district, except if such appeal is from a contested case, as defined in section 4-166, such appeal shall be in accordance with the provisions of section 4-183, except venue shall be in the judicial district where the land affected is located, and if located in more than one judicial district to the court in any such judicial district. Such appeal shall be made returnable to said court in the same manner as that prescribed for civil actions brought to said court. Notice of such appeal shall be served upon the inland wetlands agency. The appeal shall state the reasons upon which it is predicated and shall not stay proceedings on the regulation, order, decision or action, but the court may on application and after notice grant a restraining order. Such appeal shall have precedence in the order of trial."

be filled, to have the applicants excavate a pond at a site on Holland Brook in Earle Park,[8] a public park in Glastonbury, within 1000 feet of the pond to be filled on the applicants' property. At the suggestion of one of the commission members, however, the resolution adopted by the commission was loosely worded so that the commission would not be bound by that intention if a more attractive alternative for compensation should present itself.

"The conclusion of the trial court that the commission acted properly must be sustained unless the commission's decision is arbitrary, illegal or not reasonably supported by the evidence. *Connecticut Television, Inc.* v. *Public Utilities Commission,* 159 Conn. 317, 328, 269 A.2d 276 [1970]; *Thompson* v. *Water Resources Commission,* 159 Conn. 82, 87, 267 A.2d 434 [1970]. The plaintiff[s] [have] the burden of proof in challenging the administrative action. *Anthony Augliera, Inc.* v. *Loughlin,* 149 Conn. 478, 482, 181 A.2d 596 [1962]." *Lovejoy* v. *Water Resources Commission,* 165 Conn. 224, 228–29, 332 A.2d 108 (1973).

The broad legislative purpose of the wetlands act is set forth in General Statutes § 22a-36.[9] That section

---

[8] Earle Park is accessible from the applicants' land by public easements and the stream on the applicants' property, the south branch of Holland Brook, is a tributary of Holland Brook.

[9] "[General Statutes] Sec. 22a-36. INLAND WETLANDS AND WATER-COURSES. LEGISLATIVE FINDING. The inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed. The wetlands and watercourses are an interrelated web of nature essential to an adequate supply of surface and underground water; to hydrological stability and control of flooding and erosion; to the recharging and purification of groundwater; and to the existence of many forms of animal, aquatic and plant life. Many inland wetlands and watecourses have been destroyed or are in danger of destruction because of unregulated use by reason of the deposition, filling or removal of material, the diversion or obstruction of water flow, the erection of structures and other uses, all of which have despoiled, polluted and eliminated wetlands and watercourses.

states that the purpose of the act is to protect and preserve inland wetlands and watercourses "by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology . . . ." In our case law we have recognized that "[i]t is important to remember that '[a]gainst [the] laudable state policy [of such legislation] must be balanced the interests of the private landowner who wishes to make productive use of his wetland.' *Brecciaroli* v. *Commissioner of Environmental Protection,* 168 Conn. 349, 354, 362 A.2d 948 (1975)." *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 552, 525 A.2d 940 (1987); see also *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 562, 552 A.2d 796 (1989); *Manor Development Corporation* v. *Conservation Com-*

Such unregulated activity has had, and will continue to have, a significant, adverse impact on the environment and ecology of the state of Connecticut and has and will continue to imperil the quality of the environment thus adversely affecting the ecological, scenic, historic and recreational values and benefits of the state for its citizens now and forever more. The preservation and protection of the wetlands and watecourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state. It is, therefore, the purpose of sections 22a-36 to 22a-45, inclusive, to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing their disturbance and pollution; maintaining and improving water quality in accordance with the highest standards set by federal, state or local authority; preventing damage from erosion, turbidity or siltation; preventing loss of fish and other beneficial aquatic organisms, wildlife and vegetation and the destruction of the natural habitats thereof; deterring and inhibiting the danger of flood and pollution; protecting the quality of wetlands and watercourses for their conservation, economic, aesthetic, recreational and other public and private uses and values; and protecting the state's potable fresh water supplies from the dangers of drought, overdraft, pollution, misuse and mismanagement by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn."

*mission,* 180 Conn. 692, 695, 433 A.2d 999 (1980); *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 151, 365 A.2d 387 (1976).

To achieve the desired balance, General Statutes (Rev. to 1985) § 22a-42 (a)[10] expressly encouraged municipal regulation of wetlands and watercourses. See *Aaron* v. *Conservation Commission,* 183 Conn. 532, 538, 441 A.2d 30 (1981). That section provides in pertinent part that "it is hereby declared to be the public policy of the state to encourage municipal participation by means of regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities or districts." General Statutes (Rev. to 1985) § 22a-42 (a). The scope of municipal regulations is governed by § 22a-42 (e), which provides in relevant part: "Any ordinances or regulations shall be for the purpose of effectuating the purposes of sections 22a-36 to 22a-45, inclusive, and, a municipality or district, in acting upon ordinances and regulations shall give due consideration to the standards set forth in section 22a-41."[11]

The plaintiffs point to General Statutes § 22a-41 (a) (1) through (6) and argue that the legislature set forth six factors for consideration to "circumscribe administra-

[10] General Statutes (Rev. to 1985) § 22a-42 (a) provides: "MUNICIPAL REGULATION OF WETLANDS AND WATERCOURSES. ACTION BY COMMISSIONER. (a) To carry out and effectuate the purposes and policies of sections 22a-36 to 22a-45, inclusive, it is hereby declared to be the public policy of the state to encourage municipal participation by means of regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities or districts."

[11] General Statutes § 22a-42 (e) provides: "Municipal or district ordinances or regulations may embody any regulations promulgated hereunder, in whole or in part, or may consist of other ordinances or regulations in conformity with regulations promulgated hereunder. Any ordinances or regulations shall be for the purpose of effectuating the purposes of sections 22a-36 to 22a-45, inclusive, and a municipality or district, in acting upon ordinances and regulations shall give due consideration to the standards set forth in section 22a-41."

tive discretion" and those six factors do not include consideration of "off-site factors." Section 22a-41 (a), however, also provides that municipal or district commissions "shall take into consideration all relevant facts and circumstances, including *but not limited to:* [the six factors enumerated in the statute.]" (Emphasis added.) Similarly, Glastonbury Inland Wetland and Watercourse Regulations § 6.1.4[12] sets forth a list of considerations for the commission when reviewing permit applications. Like § 22a-41 (a), that list in the local

---

[12] The Glastonbury Inland Wetland and Watercourse Regulations § 6.1.4 provides: "All relevant facts and circumstances, including but not limited to, the following:

"a. The environmental impact of the proposed action, including the effects on the natural capacities of the inland wetland or water course to support deservable biological life to prevent flooding, to supply water, to control sediment, to facilitate drainage and to promote public health and safety.

"b. The consideration of the alternatives to the proposed action which might better enhance environmental quality or have a less detrimental effect and which could feasibly attain the basic objectives of the activity. This should include, but not be limited to the alternative to taking no action, or postponing action pending further study, the alternative of requiring actions of different nature which would provide similar benefits with different environmental impacts, such as using a different location for the activity.

"c. The relationship between the short-term uses of the environment and the maintenance and enhancement of long-term productivity, including consideration of the extent to which the proposed activity involves trade offs between short-term environmental gains at the expense of long-term losses or vice-versa, and consideration of the extent to which the proposed actions foreclose future options.

"d. Irreversible and irretrievable commitments of resources which would be involved in the proposed activities.

"e. The character and degree of injury to, or interference with, safety, health or the reasonable use of property which would be caused or threatened. This includes recognition of potential damage from erosion turbidity or siltation, loss of fish and other beneficial aquatic organisms, wildlife and vegetation, the dangers of flooding and pollution, and destruction of the economics, aesthetic, recreational and other public and private uses and values of wetlands and water courses.

"f. The suitability of such action to the area for which it is proposed. This requires the Commission to balance the need for the economic growth of the Town and the use of its land, with the need to protect its environment for the people of the Town and the benefit of generations yet unborn."

regulations is not all inclusive. Accordingly, the plain language of § 22a-41 (a) and the corresponding local regulations do not, as the plaintiffs argue, hamstring the commission's administrative discretion. Moreover, the commission's authority to consider factors other than those enumerated in the statutes and regulations is supported by the scope of the wetlands act which "envisages its adaptation to infinitely variable conditions for the effectuation of the purposes of the statutes." *Aaron* v. *Conservation Commission,* supra, 541. An agency empowered to implement the wetlands act must therefore be vested with a certain amount of discretion in order to carry out its function. Cf. *Cioffoletti* v. *Planning & Zoning Commission,* supra, 559 (commission may exercise those powers that "are necessary to enable it to discharge its duties and carry into effect the objects and purposes of its creation"); *Commission on Hospitals & Health Care* v. *Stamford Hospital,* 208 Conn. 663, 673, 546 A.2d 257 (1988); *Arnold Bernhard & Co.* v. *Planning & Zoning Commission,* 194 Conn. 152, 159, 479 A.2d 801 (1984); *Patry* v. *Board of Trustees,* 190 Conn. 460, 469, 461 A.2d 443 (1983); *Riley* v. *State Employees' Retirement Commission,* 178 Conn. 438, 442, 423 A.2d 87 (1979).

The plaintiffs urge us to distinguish between the commission's discretion to require compensatory measures to improve wetlands on the property that is the subject of the permit, which they concede are permissible, and measures to improve or create wetlands elsewhere in the community. We see nothing in the statutes or regulations that would require such a distinction and prevent a local wetlands commission from securing an agreement to provide off-site compensation for the loss of wetlands so long as the commission has considered the impact of the application on the subject property in accord with the policies outlined in §§ 22a-36 through 22a-45 of the General Statutes and

the local regulations. Cf. *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 250, 470 A.2d 1214 (1984). While the commission's deliberations in the present case might have been clearer and its ultimate decision more artfully stated; *DeMars* v. *Zoning Commission,* 142 Conn. 580, 584, 115 A.2d 653 (1955); we cannot say that the commission failed to act properly in this instance. We conclude, therefore, that the trial court did not err when it found that "the imposed condition of off-site mitigation, under the circumstances of this case, was reasonable, based on an adequate record and is a valid exercise of municipal regulation under the Act." See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1981).

## III

The plaintiffs next claim that the trial court erred in holding that the notice of the application conditionally approved by the commission was adequate to afford notice of the commission's intention to seek off-site compensation. According to the plaintiffs, their due process rights were violated because the notice issued by the commission was inadequate as "it mentioned only activities proposed to take place on the Red Hill site and failed to notify persons who may be affected by the off-site compensation . . . ."

Initially, we note that the trial court's decision will not be reversed unless it is clearly erroneous. Practice Book § 4061; *Cookson* v. *Cookson,* 201 Conn. 229, 243, 514 A.2d 323 (1986); *Hall* v. *Planning Commission,* 181 Conn. 442, 445, 435 A.2d 975 (1980). "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." *Cookson* v. *Cookson,* supra, 243; *Robert S. Weiss & Co.* v. *Mullins,* 196 Conn. 614, 618, 495 A.2d 1006 (1985). In the present case,

the trial court determined that, although the notice published by the commission did not specifically mention off-site compensation, the procedure followed by the commission did not constitute a denial of due process because "[t]he plaintiffs had notice of the matters of substance." The court noted in its memorandum of decision that at the public meeting held on July 10, 1986, the topics posted for discussion included " '[c]ompensating measures if the pond is to be eliminated.' " It went on to find that the plaintiffs "had a full opportunity to meet [the off-site compensation issue] at the public hearing and at two subsequent public meetings which they and their representatives attended . . . . There is no showing of error or prejudice so as to constitute a denial of due process. See *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 676 [236 A.2d 917] (1967). It cannot be said that the action of the Commission in this regard was illegal, arbitrary or in abuse of the discretion vested in it." From our review of the record we cannot say that the trial court was clearly erroneous in concluding that the plaintiffs had adequate notice of what was being considered by the commission. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 221.

The plaintiffs claim, however, that since the off-site compensation was to take place in Earle Park, a municipally-owned property, every citizen in the town of Glastonbury was potentially affected. The plaintiffs argue that even if they had notice and were present at the public hearing and meetings, other members of the public who might have been concerned with the installation of a pond in Earle Park were not properly notified. We reject this argument because "due process rights are personal, and cannot be asserted vicariously. *Shaskan* v. *Waltham Industries Corporation,* 168 Conn. 43, 49, 357 A.2d 472 (1975); see *Silverman* v. *St. Joseph's Hospital,* 168 Conn. 160, 175–77, 363

A.2d 22 (1975)." *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 3 Conn. App. 432, 449, 489 A.2d 398 (1985), aff'd, 200 Conn. 630, 513 A.2d 52 (1986). The plaintiffs therefore do not have standing to raise potential claims of the public at large concerning the off-site compensation secured by the commission.

## IV

The plaintiffs next maintain that the trial court erred by failing to find that the wetlands permit issued to the applicants was invalid because the condition imposed on its issuance was vague and unenforceable.

The record discloses that the only condition on the issuance of the wetlands permit discussed by the commission *and agreed to* by Red Hill Development Corporation as compensation for the elimination of the pond on the applicants' property was the enhancement of the wetlands area in the lower course of Holland Brook by the applicants' creation of a pond in Earle Park. As noted earlier, the resolution concerning compensation for the loss of the pond on the applicants' property was loosely worded so as not to restrict the commission from seeking other compensation in the event a more attractive alternative was presented.

We conclude that despite the wording of the resolution, the accompanying circumstances made it sufficiently clear that the commission imposed as a minimum condition on the issuance of a wetlands permit, the obligation on the applicants to excavate a pond on Holland Brook. Further, the commission has ample authority to enforce that condition by revocation of the applicants' permit in the event that that condition or an agreed alternate condition is not satisfied. General Statutes § 22a-42a (d); Glastonbury Inland Wetland and Watercourse Regulations §§ 7.5 and 11.2.b (i). We find no error concerning this vagueness claim by the plaintiffs.

## V

Finally, the plaintiffs contend that "the trial court erred by finding that the applicant[s] submitted alternatives to its proposed subdivision plan to enable the commission to consider alternatives to the proposed regulated activities as it is required to do."

The short answer to this claim of the plaintiffs is that, although the applicable statutes and regulations[13] mandate that the commission consider alternatives to the applicants' proposed action, nowhere is it mandated that the alternatives emanate from the applicants. We conclude, as did the trial court in its memorandum of decision, that "[t]he record is replete with alternatives proposed for consideration by the Commission whether submitted by the applicants with their reasons why such alternatives were not feasible or by interested parties." Neither the General Statutes nor the local regulations compel the applicants, sua sponte, to submit formal plans or drawings for all possible alternatives. Absent such a direction by the legislature, we will not read such a requirement into the wetlands act. See *Glastonbury Co.* v. *Gillies,* 209 Conn. 175, 179, 181, 550 A.2d 8 (1988); *State Medical Society* v. *Board of Examiners in Podiatry,* 208 Conn. 709, 727, 546 A.2d 830 (1988); *Burnham* v. *Administrator,* 184 Conn. 317, 325, 439 A.2d 1008 (1981); *Robinson* v. *Guman,* 163 Conn. 439, 444, 311 A.2d 57 (1972).

There is no error.

In this opinion the other justices concurred.

---

[13] See General Statutes §§ 22a-19 (b) and 22a-41 (b), and Glastonbury Inland Wetland and Watercourse Regulations § 6.1.4 (b).