[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was referred to the undersigned for a hearing and a decision thereon.
The court rendered a memorandum of decision on September 2, 1992. Therein the court found that the facts upon which the commission reached in making its decision were not sufficient and directed the commission to render a finding of fact on the issues. The commission entered a supplemental finding of fact on December 28, 1992. The court held a hearing on this supplemental finding of facts on November 1, 1994.
The court may search the record for the support of the agency's decision. Gagnon v. Inland Wetlands and WatercoursesCommission, 213 Conn. 604, 606.
The minutes of the commissioner's rendering the decision is unchanged on the return. (Return, Second Supplemental Return #1).
At the meeting, the first matter to be considered was the drainage review. The town engineer was of the opinion that this created no problem. The members were in accord.
The other matters were discussed. One of the issues raised by a commission member was the problem that prudent and feasible alternatives were not adequately addressed.
A member, Mr. Coughlin, stated, "Alternate areas were proposed to offset the loss wetland areas but no evidence was submitted to support that manmade wetlands was equal natural wetlands in value. CT Page 3057 I think that a statement was made that they could make good wetlands but there was no evidence to say that it was true."
In Red Hill Coalition, Inc. v. Conservation Commission,212 Conn. 712, the Court discussed "compensatory measures to improve wetlands on the property that is the subject of the permit, which they concede are permissible . . ." (p. 722).
The developer proposed two compensatory wetlands consisting of 1.10 acres, as compensatory for the 1.03 acres of wetlands lost. This will result in no overall loss of wetland acres and no significant loss of wetland function.
The "compensatory measures" are those "permissible" under the statute. Red Hill Coalition, Inc. As such, the compensatory wetlands constitute the only feasible and prudent alternative to leave the pockets of wetlands in the middle of the parking field. There does not appear to be another alternative.
The language "feasible and prudent" appears in ManchesterEnvironmental Coalition v. Stockton, 184 Conn. 51, at pp. 61, 62. The proposal meets the definition.
"The Commission feels, based upon the record, that all the wetlands and watercourses above mentioned are of significant value and that the proposed activity would have an adverse effect to the functions of these wetlands and watercourses." (Supplemental Finding of Fact, December 28, 1992). The Commission failed to distinguish between wetlands of limited purpose and those of more importance. See "Horizon Commission Response to Comments", (Supplemental Return, #3, p. 19).
 "The broad legislative purpose of the wetlands act is set forth in General Statutes § 22a-36. That section states that the purpose of the act is to protect and preserve inland wetlands and watercourses "by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology. . . ." In our case law we have recognized that "[i]t is important to remember that `[a]gainst [the] laudable state policy [of such legislation] must be balanced the interests of the private landowner who wishes CT Page 3058 to make productive use of his wetland.' (Citation omitted.) Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 552, 525 A.2d 940 (1987).
 To achieve the desired balance, General Statutes (Rev. to 1985) § 22a-42(a) expressly encouraged municipal regulation of wetlands and watercourses. See Aaron v. Conservation Commission, 183 Conn. 532, 538 441 A.2d 30
(1981). That section provides in pertinent part that "it is hereby declared to be the public policy of the state to encourage municipal participation by means of regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities or districts." General Statutes (Rev. to 1985) § 22a-42(e), which provides in relevant part: "Any ordinances or regulations shall be for the purpose of effectuating the purposes of sections 22a-36 to 22a-45, inclusive, and, a municipality or district, in acting upon ordinances and regulations shall give due consideration to the standards set forth in section 22a-41."
 The plaintiffs point to General Statutes § 22a-41(a)(1) through (6) and argue that the legislature set forth six factors for consideration to "circumscribe administrative discretion" and those six factors do not include consideration of "off-site factors." Section 22a-41(a), however, also provides that municipal or district commissions "shall take into consideration all relevant facts and circumstances, including but not limited to: [the six factors enumerated in the statute.]" (Emphasis added.) Similarly, Glastonbury Inland Wetland and Watercourse Regulations § 6.1.4 sets forth a list of consideration for the commission when reviewing permit applications. Like § 22a-41(a), that list in the local regulations is not all inclusive." CT Page 3059
Red Hill Coalition, Inc., supra 718-722.
 In the 1972 amendments to the IWWA, the legislature specifically addressed the concerns of those who feared that wetlands, as defined by the statute, "could cover 25% of the State of Connecticut" or that wetlands regulation would end up controlling "half the Town of Suffield." Remarks of Representative Thomas M. Kablik, 15 H.R. Proc., Pt. 4, 1972 Sess., pp. 1615-16. Referring to the lack of any existing limits on the authority of local commissions to define and regulate wetlands, Representative Kablik noted that "this is a lousy way to legislate." Id. Many comments expressed concern as to the economic ramifications of the unbridled wetlands regulation. In describing the amendments, which include the balancing test in § 22a-36, Representative David Lavine said: "We want to plan for our growth. We want to plan for our industrial development. Mr. Speaker, what this Bill does is strike a balance. It strikes a balance between the needs of the State and the protection of the peole [sic] who have property within the State." 15 H.R. Proc., Pt. 4, 1972 Sess., p. 1612. He specifically noted the activities within wetlands that were permitted under the amendments and stated: "It's our . . . legislative intent . . . Mr. Speaker, to see to it that this is interpreted in the widest possible way." Id. Far from supporting an expansive view of the authority of conservation commissions to regulate beyond the boundaries of designated wetlands, in contradistinction to any statutory provision, the available legislative history suggests an expansive view of permitted activities and a desire to insist on protecting the legitimate interests of property owners in the use of their land.
Mario v. Fairfield, (dis.) 217 Conn. 164, 180. CT Page 3060
 The purpose of the Inland Wetlands and Watercourses Act is to provide an orderly process in which the rights of landowners to use or develop their land can be balanced with
the need to protect the invaluable public resource of wetlands. See General Statutes § 22a-36. The statute, and the regulations adopted to implement it, provide for an application and hearing process through which these competing interests are balanced. See General Statutes § 22a-42a.
Woodburn v. Conservation Commission, 37 Conn. App. 166, 190.
The operative test in the cases cited is the "balance," which the agency must exercise.
Nowhere can be found in the record any evidence of the balancing of the competing interests.
The wetlands are all given the same quantification. None is treated any differently from the next — regardless of the lack of value for function.
The court finds no substantial evidence in support of the reasons given for the rejection of the application; after a due search of the record.
The appeal is sustained.
Robert P. Burns, Judge