[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs appeal from a decision of the Environmental Impact Commission of the City of Danbury (the "Commission"), in which the Commission voted to approve an application for regulated activities submitted by Payne Road Development Corporation (the "applicant").
During the hearing which took place on November 17, 1997, one of the plaintiffs, Lori Rodriguez, attempted to establish that she had been aggrieved by the Commission's decision. Rodriguez testified that she owns a house located at 53 Payne Road in Bethel that is directly across the street from the applicant's property. She further testified that she has not lived in the house since November of 1996. She also admitted that she may not even own the property given that she has filed for bankruptcy.[1] Even if Rodriguez does own the property, she failed to establish that the property is within ninety feet of the wetlands or watercourses involved in this appeal. The court concludes, therefore, that Rodriguez is not aggrieved pursuant to General Statutes § 22a-43(a).[2]
Rodriguez and the other plaintiffs, however, submitted verified complaints to the Commission that are signed and notarized. The complaints state that the proposed subdivision involves "activities which are reasonably likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the CT Page 2832 State, and the undersigned hereby intervenes pursuant to Section22a-19 of the Connecticut General Statutes, for the purpose of protecting the public interest in those environmental resources. I hereby certify that this claim is valid and proper to the best of my knowledge and belief." Return of Record (ROR), Ex. 26.)
The verified complaints satisfy the requirements of General Statutes § 22a-19(a).[3] Accordingly, the plaintiffs have standing to bring this appeal. See Red Hill Coalition v.Conservation Commission, 212 Conn. 710, 714-15, 563 A.2d 1339
(1989); Colby Associates v. East Haven Planning and ZoningCommission, Superior Court, judicial district of New Haven, Docket No. 330698 (November 3, 1992, Fracasse, J.) (7 C.S.C.R. 1339).
The applicant owns 16.07 acres of land located at 50-70 Payne Road in Danbury. Pursuant to the Inland Wetlands and Watercourses Regulations of the City of Danbury, the applicant filed an application for a three-lot subdivision on January 18, 1996. Various experts and area residents testified before the Commission during six public hearings that were held on June 12, June 26, July 10, July 24, August 14, and August 28 of 1996. On September 25, 1996, the Commission unanimously approved the application with certain conditions. The Commission provided the following reasons for its decision:
 Whereas, in evaluating the direct effects of the proposed activity on the wetlands of the property, the Commission finds that the majority of the area affected (3,400 square feet) will enhance the wetland habitat by creating open water basins and that the direct elimination of wetlands (1,448 square feet) will not provide a significant functional loss to the 76,806 square feet of wetlands that exist on the property; and
 Whereas, in considering the water quality impacts of the runoff that would drain from the increased amount of impervious surfaces from the site, in view of the microanalysis and macroanalysis (documented in the Health Department's report) of water pollutant loadings from the property in its post development state, the Commission has determined that there will not be a significant impact (relative to water quality standards and measured concentrations of these pollutants) to the receiving watercourses of Limekiln Brook and the Still River; and CT Page 2833
 Whereas, the mitigative measures proposed by the applicant and the Health Department along with the stipulations of approval documented below, will substantially ameliorate and compensate for the insignificant impact upon wetlands and watercourses which would occur on the developed property; and
 Whereas, the Commission has considered alternatives to the proposed development presented by the applicant and has determined that the other site designs and configurations are either non-feasible, non-prudent or would provide no less of a detrimental effect upon wetlands and watercourses; and
 Whereas, the Commission has considered all of the criteria listed in Section 9.2 of the Regulations and has determined that an approval of this project would not provide a substantial impact, would not result in an irreversible or irretrievable loss of resources, and the enhancement to the detention basins would provide positive effects to the wetlands habitat that would benefit the long term productivity of the wetland system in a manner that outweighs the short term losses that would occur from construction of the development. [ROR, Ex. 212.]
"In challenging an administrative agency action, the plaintiff has the burden of proof." Samperi v. Inland WetlandsAgency, 226 Conn. 579, 587, 628 A.2d 1286 (1993). "The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion." Id.
 The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. The substantial evidence rule is a compromise between opposing theories of CT Page 2834 broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . [It] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." [(Citations omitted; internal quotation marks omitted.) Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-42, 525 A.2d 940
(1987).]
The decision of the Commission must not be disturbed unless the decision is "arbitrary, illegal or not reasonably supported by the evidence." Red Hill Coalition, Inc. v. ConservationCommission, supra 212 Conn. 718.
In support of their appeal, the plaintiffs advance several arguments, none of which have merit.[4] The plaintiffs claim that the applicant may have previously engaged in improper activities on the subject property. According to the plaintiffs, the volume and content of fill that the applicant had placed on the premises did not comply with a permit that it had previously acquired. The plaintiffs contend that, because the Commission failed to address these alleged improprieties, it could not approve the application that is the subject of this appeal. The plaintiffs have not cited to any legal authority which stands for this proposition. Moreover, the record contains substantial evidence which contradicts the plaintiffs' claim. For example, the Commission considered an environmental assessment report that was prepared by the Environmental Section of the Danbury Health Department.[5] The report states that "the material used to CT Page 2835 fill the Payne Road site was not a waste material, and was, in fact, virgin soil material excavated from the Danbury Wastewater Treatment Plant." (Emphasis in original.) (ROR, Ex. 183, p. 10.) The report further stated that allegations concerning the deposition of contaminated materials on the property in 1990 were not substantiated. (ROR, Ex. 183, p. 26; see also Ex. 249, pp. 7-14.) At one of the public hearings, the Commission heard testimony from Paul Jaber, the applicant's attorney, regarding the amount of fill that had been placed on the property. Jaber stated that only 25,000 cubic yards of fill had been deposited on the site, not the figure of 350,000 cubic yards that had been put forth by Barbara Obeda, the plaintiff's environmental expert. (ROR, Ex. 245, p. 2.)[6]
The plaintiffs also maintain that the applicant did not have standing to apply for a permit because it has been a dissolved corporation since March 30, 1990. The plaintiffs have not supplied any legal authority in support of this contention. Section 7.1 of the Inland Wetlands and Watercourses Regulations of the City of Danbury states that "[a]ny person wishing to conduct a regulated activity shall, prior to the commencement of such activity, submit an Application for Permit to Conduct Regulated Activity to the Commission." Section 2.20 defines person as "any person, firm, partnership, association, corporation, company, organization or legal entity of any kind, including municipal corporations, governmental agencies or subdivisions thereof." Nothing in the regulations precludes a dissolved corporation from applying for a permit. On the contrary, any individual or legal entity that wants to engage in regulated activities must submit an application before commencing such activities.
The plaintiffs also claim that a previous permit which the applicant acquired to place fill on the subject property was not properly assigned to the applicant by the original holder of the permit. The plaintiffs contend that this improper assignment prohibited the Commission from issuing a new permit to the applicant. Once again, the plaintiffs have not cited to any legal authority to support their argument. The court need not decide whether or not the assignment of a prior permit was proper. The only issue that must be determined is whether or not the Commission's decision was supported by substantial evidence.
The plaintiffs argue that the approved activities will adversely affect wetland habitats and will result in a CT Page 2836 significant functional loss to the wetlands on the property. Specifically, the plaintiffs maintain that the Commission failed to consider prior filling on the premises. As stated above, however, the Commission considered testimony which indicated that the amount of fill that had been placed on the property was not as much as the plaintiffs' expert had suggested. (ROR, Ex. 245, p. 2.) Moreover, Jack Kozuchowski, Coordinator of Environmental and Occupational Health Services for the Danbury Health Department, testified that the proposal actually created a net increase in the amount of wetlands on the property. (ROR, Ex. 249, p. 13.)
The plaintiffs argue that the approved activities may pollute downstream watercourses because the fill on the property may be contaminated. As noted above, however, the environmental assessment report states that the fill is not contaminated. (ROR, Ex. 183, pp. 10, 26.) Furthermore, the report concluded that "[t]he water quality effects on Limekiln Brook and the Still River were determined to be insignificant." (ROR, Ex. 183, p. 26.)
The plaintiffs assert that the Commission failed to consider all of the feasible or prudent alternatives for the development of the property. The record reveals that the Commission did, in fact, consider feasible and prudent alternatives. (ROR, Exs. 251, 252.) In its resolution, the Commission stated that it "considered alternatives to the proposed development presented by the applicant and has determined that the other site designs and configurations are either non-feasible, non-prudent or would provide no less of a detrimental effect upon wetlands and watercourses." (ROR, Ex. 212.) This conclusion is supported by substantial evidence. (See, e.g., ROR, Ex. 183, pp. 8-9; Ex. 188; Ex. 249, pp. 21-22.)
The plaintiffs' final argument is that the Commission failed to comply with the requirements of § 9.2 of the Inland Wetlands and Watercourses regulations because it did not consider prior activities on the property and potential alternatives to the proposal. As stated above, these assertions are inaccurate. Moreover, the Commission stated in its resolution that it "considered all of the criteria listed in Section 9.2 of the Regulations and has determined that an approval of this project would not result in an irreversible or irretrievable loss of resources, and the enhancement to the detention basins would provide positive effects to the wetlands habitat that would CT Page 2837 benefit the long term productivity of the wetland system in a manner that outweighs the short term losses that would occur from construction of the development." (ROR, Ex. 212.) In light of the conclusions of the environmental assessment report and the testimony of Michael Lillis, a licensed engineer, Dr. Gene McNamara, a soil and environmental consultant, Wayne Thomas, a hydrogeologist, Jack Kozuchowski, the Coordinator of Environmental and Occupational Health Services for the Danbury Health Department, and Paul Jaber, an attorney for the applicant, the court concludes that the record contains substantial evidence which supports the decision of the Commission. (See, e.g., ROR, Ex. 183; Ex. 244, pp. 4-7; Ex. 245, pp. 2-8; Ex. 246, pp. 5-6; Ex. 247, pp. 7-13; Ex. 249, pp. 7-14, 19-22.)
The appeal is dismissed.
Mihalakos, J.