[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from a decision of the Inland Wetlands Commission of the City of Ansonia denying the plaintiff's application to conduct a regulated activity near an inland wetland. The plaintiff is the owner of a 7.6 acre undeveloped parcel of land located in a residential zoning district in Ansonia, Connecticut. The plaintiff originally proposed a 13-lot subdivision for the sloping property which is plagued by flooding and runoff problems. The property contains both inland wetland area and also has White Mare Brook running through a portion of it. Storm water from the uphill development runs through the property causing erosion and increased flooding to downhill properties.
Although the plaintiff's proposal contained many features to reduce the impact of the development and even alleviate these existing conditions, including a storm water detention basin, CT Page 96 gravel driveways, special infiltration galleys for ground absorption of roof and gutter runoff, and city sewers, it was strongly opposed by the downhill property owners.
The proposal was submitted to various agencies as required by law, and certain adjustments were made, including reducing the number of proposed lots from 13 to 12. The original plan was denied without prejudice on July 30, 1998 for the purpose of obtaining a comprehensive King's Mark Environmental Review Report.
 "A King's Mark Environmental Review Team (ERT) is a group of environmental professionals drawn together from a variety of federal, state and regional agencies. Specialists on the Team include geologists, biologists, soil scientists, foresters, climatologists and landscape architects, recreational specialists, engineers and planners. The ERT operates with state funding under the aegis of the King's Mark Resource Conservation and Development (RCD) Area — an 83 town area serving western Connecticut." ROB. # 18, p. 18.
Generally, the King's Mark report approved of the proposals to control storm water flow and potential for erosion and sedimentation. Some concerns were still expressed for the use of the interior wetlands as a conduit for collected storm water discharge and maintenance of the proposed detention basin. Concerns also were expressed about the continuing runoff from the uphill properties and maintaining a sufficient undeveloped buffer along White Mare Brook/Beaver Brook. The report also recommended reducing the number of lots to avoid or reduce the development's impact on the wetlands area and to preserve as much open space and undeveloped buffer area as possible. See ROB. # 18.
In contrast, the Conservation Commission, which also reviewed the proposal pursuant to § 5.4.3 of the Ansonia Inland/Wetland Regulations [ROB. # 2, p. 61 strongly opposed any development of the property based on its historical review of the water problems with this site. ROR # 4.
In response, the applicant reconfigured its subdivision map to address some of the concerns raised by the King's Mark report, but did not reduce the number of proposed building lots.
The revised application was reviewed and discussed at both the January and February 1999 meetings of the Inland Wetlands CT Page 97 Commission. ROB. ## 3, 7. As stated above, the application was strongly opposed by area residents both by petition and letters to the commission, as well as public comment at each of the meetings. ROR ## 2, 7, 11, 12 and 17.
The chairman of the Commission was strongly opposed to the proposal and spoke at length at the February 4 meeting summarizing the concerns of residents, and the Conservation Commission. ROB. # 3. The application was unanimously denied. (ROB. # 15) and the plaintiff appealed to this court.
The court finds that Prestige Builders LLC, is the owner of the property and is statutorily aggrieved by the decision of the Inland Wetlands Commission denying its application. Ex. B, Deed; Conn. Gen. Stat. § 22-43 (a). In accordance with state statutes, the Commissioner of Environmental Protection is also joined as a party in all wetlands appeals to promote uniformity in the disposition of these proceedings on review, and has filed its brief accordingly. Conn. Gen. Stat. § 22a-43.
It is the plaintiff's burden to establish that the record does not support the action of the agency. Sampieri v. Inland WetlandsAgency, 226 Conn. 579, 587 (1993); Red Hill Coalition, Inc. v.Conservation Commission, 212 Conn. 710, 718 (1989); Laufer v.Conservation Commission, 24 Conn. App. 708, 715 (1991).
The duty of the reviewing court in this wetlands appeal is to uphold the agency's action unless the agency's action is "arbitrary, illegal or not reasonably supported by the evidence."Red Hill Coalition, supra, 212 Conn. at 718. An agency's decision must be sustained if an examination of the record discloses evidence that supports any of the reasons given. Huck v. InlandWetlands Agency, 203 Conn. 525, 539-40 (1987). The evidence to support any such reason must be substantial. Id. 540.
In evaluating whether the conclusions reached are supported by application of the substantial evidence standard, the determination of fact is a matter within the province of the wetlands agency. Huck, supra, 203 Conn. at 542. The agency is not required to use the evidence and materials presented to it in any particular fashion, as long as the conduct of the hearing is fundamentally fair. Bradley v. Inland Wetlands Agency,28 Conn. App. 48, 54 (1992).
Here, the court finds that there is substantial evidence in the CT Page 98 record to support the agency's denial of this application. Although this court cannot substitute its judgment for that of the agency, the court does agree with the concerns of the Commission members. Although the applicants have proposed and modified their plan in many respects to reduce the impact of the development on the wetlands and watercourses and, in fact, to alleviate some of the problems caused by prior development, many issues still remain to be resolved to achieve a development that would be both feasible and practical. Specifically, the proposed development imposes the burden of maintaining the drainage ditch and pond on individual potential property owners by deed restriction, not the developer or a property owner's association. Also, the revised application merely rearranged the lot lines instead of combining them to reduce the development and impact on the wetlands as recommended by the King's Mark report.
Plaintiff also argues that the Commission's denial of its revised proposal constitutes an impermissible taking of its property, without just compensation, citing the Commission's prior denials of proposed development and the alleged prejudgment and bias of the Commission chairman.
Whereas the applicant may never be able to convince the present chairman of the desirability of its proposal, the chairman's opinion and decision-making were clearly exercised in good faith and based on substantial evidence of the gravity of the problems associated with this site. All voting Commission members agreed with his concerns. The court finds that the facts here are not sufficient to establish an impermissible taking of plaintiff's property. To establish the requisite finality, plaintiff must show that the agency would not allow any reasonable alternative use of this property. Gil v. Inland Wetlands and WatercoursesAgency, 219 Conn. 404 (1991) Although a property owner is not required to take "practically fruitless measures" before establishing the required finality, Cumberland Farms, Inc. v.Town of Groton, 247 Conn. 196 (1998), that point has not yet been reached in this case where a differently configured application, reducing the number of building lots and addressing the other concerns with respect to design, construction and maintenance of the drainage ditch and pond would not be "practically fruitless" and might better address the agency's concerns.
Accordingly, the appeal is denied.
The Court CT Page 99
By Sequino, J.