[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves an appeal of a decision of the defendant Inland Wetlands and Watercourses Agency of the Town of Wolcott (Agency), which approved a wetland permit for the defendant Chestnut Wolcott, LLC (Developer). The action was brought by the plaintiff Vincent J. Tarullo pursuant to General Statutes § 22a-34 et seq. The wetlands permit which is the subject of the appeal authorizes the developer to build a thirty-unit single family subdivision on property adjacent to Chestnut Hill Reservoir. The plaintiff Tarullo is the owner of property abutting the subdivision and is thus aggrieved for purposes of this appeal.
The developer initially applied for a wetlands permit to build a forty-nine lot subdivision on such property by application dated November 20, 1997. Hearings on this application were held on January 8, 1998, and February 20, 1998. The agency found a defect in the notice for the public hearing and on March 24, 1998, declared the application nullified and required the developer to submit a new application.
The developer on April 17, 1998, submitted a new application for the identical subdivision. At the commencement of public hearings on June 11, 1998, the plaintiff presented the agency with an intervention petition in accordance with General Statutes § 22a-19. The hearing was continued until July 22, 1998.
Following conclusion of the hearing on the second application, the agency on September 23, 1998, voted 3-3 on motions to deny and to approve the application. The agency determined that the application was denied, having failed to obtain an affirmative vote.[1]
The developer subsequently met with the chairman of the agency and town staff to review the project. The developer on November 17, 1998, filed multiple applications resulting in four separate subdivisions of the lake front property. Included in these four subdivisions was the thirty lot subdivision which is the subject of this appeal.
On November 25, 1998, the agency approved subdivision sections I and II, which contains a total of three lots and no identified wetlands. The other two subdivisions contain two and thirty lots, respectively. Public hearings on these latter subdivisions commenced on December 17, 1998. The hearings were continued until January 4, 1999.
The agency at its regular meeting on January 27, 1999, unanimously approved the two and thirty lot subdivisions subject to conditions set forth in the memorandum by the agency's consultant, Anthony Panico.
The plaintiff filed this appeal on February 23, 1999, in a timely CT Page 10818 fashion. The agency filed its return of record on June 22, 1999. The plaintiff on October 18, 1999, filed a motion to supplement the record to include the record from the previous public hearings, as well as transcripts of those hearings on the initial applications of the developer. That motion was granted by the court and the agency submitted a supplemental return of record on July 6, 2000, further completing the record with a second supplemental return of record on March 22, 2001. The agency, the plaintiff and the developer all briefed the issues raised by this appeal, and were heard in oral argument on August 2, 2001.
 STANDARD OF REVIEW
The court's role in reviewing the action of an inland wetlands conservation committee is to determine whether the express reasons given for action are based upon the commission's regulations, and whether the reasons given are reasonably supported by the record. Huck v. InlandWetlands Agency, 203 Conn. 525, 539-540 (1987). The court should uphold the agency's action unless the action is arbitrary, illegal or not otherwise reasonably supported by the record. Redhill Coalition, Inc. v.Conservation Commission, 212 Conn. 710, 718 (1989).
The "substantial evidence rule" governs judicial review of administrative decisions. "If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld." ConnecticutBuilding Wrecking Co. v. Carothers, 218 Conn. 580, 600-601 (1991). "In determining whether an administrative finding is support by substantial evidence, a court must defer to . . . the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." (Citations omitted; internal quotation marks omitted.)Briggs v. State Employees Retirement Commission, 210 Conn. 214, 217
(1989). In reviewing the record, the court is not seeking to determine whether the trial court would have reached the same conclusion. The purpose for reviewing the record is to determine whether the record demonstrates that the agency's findings were reasonably supported by substantial evidence. Deference is afforded to the fact finding function of the agency, and the court may not substitute its judgment for the agency. Persico v. Maher, 191 Conn. 384, 409 (1983 Gagnon v. InlandWetlands and Watercourses Commission, 213 Conn. 604, 609 (1990). The burden of establishing that the record does not support the agency lies with the plaintiff. Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587
(1993). The plaintiff must prove that the decision is not reasonably supported by the record. Id., 587.
The plaintiff briefs two issues in this case. All other claims raised in the appeal but not briefed are viewed as abandoned. Collins v.CT Page 10819Goldberg, 28 Conn. App. 733, 738 (1992). First, the plaintiff claims that there is not substantial evidence in the record to support the agency's findings and decision. The plaintiff's major issue, however, is whether the agency complied with the requirement of General Statutes § 22a-41, considering "any feasible prudent alternatives to the proposed regulated activities which alternatives will cause less or no environmental impact to wetlands or water courses." A subset of this argument is whether Section 9 of the Inland Wetlands and Watercourses Regulations of the Town of Wolcott expand on the requirements set forth in General Statutes § 22a-41.
In support of this argument, the plaintiff cites R. Fuller, Land Use Law and Procedure § 21-13, for the proposition that "[o]n applications to a wetland agency, the applicant must produce some evidence that no alternatives exist, which usually requires evidence of more than one alternative." All parties cite to Samperi v. Inland Wetlands Agency,226 Conn. 579 (1993), holding that
 [t]he evidentiary burden imposed on the applicant to demonstrate that its proposal is the only feasible and prudent alternative will ordinarily require an affirmative presentation to that effect. If only one alternative is presented, the inland wetlands agency can approve the application for a permit only if no other feasible and prudent alternatives exist. In practical terms, this will usually require that the applicant present evidence of more than one alternative to the local agency.
Id., 593.
The agency, in its findings, specifically found at Finding No. 4 that "[t]he commission . . . as satisfied that feasible and prudent alternatives have been adequately investigated for the purpose of minimizing any potential detrimental effect on Chestnut Hill Reservoir and associated wetlands, and with proper attention to detail design of the storm water drainage system, potential impacts on the wetlands and watercourses of the town will be within acceptable limits."
The plaintiff argues that this finding is not supported by the record because the developers represented at various portions of the transcript that the final approved thirty lot subdivision represented the least amount of impact of any of the proposals that they considered. The plaintiff contends that the statute requires the developer to consider and demonstrate at the hearing its consideration of alternatives that would have less impact on the watercourses. CT Page 10820
The agency and developer rely on the agency's consultant, whose report is included in the record and contains the conclusion that "there are no other feasible and prudent alternative plans that allow access to the usable, non-wetlands portion of the site. . . ."
The record as supplemented at plaintiff's request to include the proceedings at the earlier hearings reflects more intrusive plans by the developer, which obviously were considered by both defendants. The record also establishes that the developer worked with the Town of Wolcott agency and town staff to review various alternatives. The approved subdivision involves only two regulated activities, as opposed to nine in the original application.
The plaintiff seems to argue that a developer seeking approval of a thirty lot subdivision must present evidence demonstrating why any alternative that would have less of an impact, such as a twenty lot subdivision, would not be feasible and prudent. As the defendants contend, this burden would not seem to be achievable; placing a burden on a developer to submit plans for an infinite number of alternatives is not feasible and would be unmanageable. In the instant case, multiple applications were filed and considered, a half a dozen public hearings were held, numerous experts testified, and a consultant was retained by the agency. The record also includes the approvals of this project by both the United States Army Corps of Engineers and the State of Connecticut Department of Environmental Protection.
The agency gave the developer and plaintiff considerable attention in assessing the development of this property. Included in the evidence it received was its consultant's report, which concluded that "there are no other feasible and prudent alternative plans." The agency's findings with respect to feasible and prudent alternatives is supported by substantial evidence; specifically, the reports of the consultant and town engineer, which are included in the record.
In evaluating the evidence in the record supporting the agency's findings, the court has considered the substantial expert testimony provided in support of the application. J. Terrence Meyers, a civil engineer and surveyor, provided a detailed description of the property and testified that the application as proposed was the most feasible and prudent alternative and greatly reduced any and all impact to the wetlands and watercourses associated with the land. David H. Lord, a certified soil scientist and environmental consultant, concluded that the project would have little or no impact on wetland soils in the project area. Mr. Lord also testified with reference to the approvals from the United States Army Corps of Engineers and the State of Connecticut Environmental CT Page 10821 Protection Agency, which agencies gave their approval only after they concluded that the project would have only minor impact on the water and wetlands. This also was Mr. Lord's conclusion, that the project would have little or no impact on the wetlands area. Keith Shortsleeve, a geologist with SMC Environmental, testified about water sampling tests made at the project location with various contaminants. Mr. Shortsleeve concluded that there were no significant impacts between the up-gradient and down-gradient surface waters at the site. Priscilla Baillie, Ph.D., an ecologist/botanist, testified concerning water quality. In her testimony and written reports, Dr. Baillie indicated that there would be minimal impact on regulated areas as a result of the proposed development. Anthony J. Panico, consultant/town planner, discussed the extensive setbacks which would protect the wetlands/watercourses, the dedication of two-thirds of the lake front property to open space, and the additional dedication of over 40% of the total site to dedicated protected open space. Mark J. Provonost, P.E., town engineer, noted in his written report dated December 14, 1998, that the proposed development had considerably less impact on the wetlands than previous applications. It also was his conclusion that if this property is to be developed, the approved project will have the least amount of impact possible on the wetlands area.
The agency has met all of the requirements of Town of Wolcott regulations and Connecticut General Statutes § 22a-41, with respect to the consideration of feasible and prudent alternatives.
The agency's decision is supported in all respects by substantial evidence in the record.
 CONCLUSION
The appeal is dismissed.
ROBERT F. McWEENY, J.